THE COUNTY OF CLAY, Appellee, v. THE COUNTY OF PALO ALTO, Appellant.

1. **Settlement of Pauper:** MINORS: EMANCIPATION. A legitimate minor child who has been emancipated by agreement with his father cannot under the poor laws of the state acquire by residence a settlement independent of that of his father.

2. **Care of Pauper:** PAYMENT OF EXPENSE FOR ANOTHER COUNTY: CERTIFICATE OF TRUSTEES. A county is entitled to recover for reasonable charges and expenses paid on behalf of another county in the care of a pauper, though such payment was made without the certificate of the township trustees.

3. ———: APPLICATION FOR AID. The application for relief required to be made in such cases by the provisions of section 1365 of the Code may be made by another than the one seeking relief.

*Appeal from Kossuth District Court.*—HON. GEORGE
H. CARR, Judge.

MONDAY, MAY 25, 1891.

ACTION to recover for medical services, care and
supplies furnished one John Finn, a poor person, whose
alleged settlement is in the defendant county. The
following stipulation of facts was filed in the case:

"It is hereby agreed and stipulated as a part of the
facts in the above-entitled cause as follows: That John
Finn is now nineteen years of age. That he is unmar-
ried, and never has been married. That he is the same
person to whom the medical aid, care and attendance
of Dr. Chas. McAllister was furnished which was the
basis of this action, as well as the person to whom
M. C. Johnson furnished care, etc., now filed herein.
That up to the time said matters and things were
furnished he was sick and unable to work, and had no
means of support of his own. *That his father had
ample means with which to support said John Finn,
but neither the board of supervisors of Clay county
nor the trustees of Herland township had knowledge
thereof. That on July, 1885, the said John Finn left
the residence and home of his father with the intention
of not returning to Palo Alto county, Iowa. That,
prior to his leaving, he and his father, David Finn,
signed articles of agreement, in which it was agreed
that said John Finn should have his time until he
attained his majority, and he was not to look to his
father for support, and his father was not to be liable
for his debts; a notice of which agreement was duly
published in the Palo Alto Pilot, a weekly newspaper
published in defendant's county, of which notice the
board of supervisors, nor trustees aforesaid, had actual
knowledge. Upon leaving Palo Alto county, the said
John Finn went to Clay county, Iowa, and hired out
to work for a resident of northern Clay county, and
worked for him until the spring of 1886, when he went
into the southern part of the county, and hired out to*

*John Mates as a farm hand, where he remained until*
*he was taken sick in the spring of 1887.* That the
notice written by the auditor of Clay county to the
county auditor and board of supervisors of Palo Alto
county, copies of which are set out in the deposition
of A. D. Franklin, and filed herein, are now lost, and
cannot be found. That there was never any record
made of any action by the board of supervisors of Palo
Alto county, Iowa, on the notices last above referred to.
That David Finn is the father of John Finn, and is now,
and has been, a resident of Palo Alto county, Iowa, for
the past six years ; and he, the said David Finn, has
had during the said six years no other residence or legal
settlement."

The plaintiff (by agreement of parties to thus
present the question) moved to strike from the stip-
ulation the italicized part, on the ground that it was
immaterial ; and the court sustained the motion. Upon
the remaining facts, with others undisputed, the court
instructed the jury that the legal settlement of John
Finn was in the defendant county. The case on other
issues was tried to a jury, that returned a verdict for the
plaintiff, and from a judgment thereon the defendant
appeals.—*Affirmed.*

*Thomas O'Conner* and *Clark & Call*, for appellant.

*A. C. Parker*, for appellee.

GRANGER, J.—I. The action of the court in
striking from the stipulation, and holding that the
settlement of Finn was in the defendant

**1. SETTLEMENT of pauper: minors: emancipation.**

county, presents the first question for us to
determine. The appellant's contention in
this respect is that the facts stricken from
the stipulation show John Finn had been emancipated
from his father, and, being emancipated, it was compe-
tent for him to make or create a new settlement in
another county. Some provisions of our Code are
important in this connection. Chapter 1 of title 11

treats "of the settlement and support of the poor." Section 1352 is a part of chapter 1 and provides: "Legal settlements may be acquired in the counties as follows: *First.* Any person having attained majority, and residing in this state one year without being warned as hereinafter provided, gains a settlement in the county of his residence. * * * *Fourth.* Legitimate minor children follow and have the settlement of their father, if he have one; but, if he have none, then that of his mother." Other subdivisions of the section provide for the settlement of married women with their husbands, and those abandoned by them, of illegitimate minors, of minors whose parents have no settlement, and of minors bound as apprentices and servants; but there is no provision for minors who are emancipated, except that the settlement of legitimate minor children follow that of their father. It thus appears that no person can obtain a settlement under the poor laws of the state (with the exception stated) unless he has attained his majority. While a minor, emancipated, may have some additional rights or privileges, he does not from that fact alone attain his majority. Code, section 2237, provides: "The period of minority extends in males to the age of twenty-one years, and in females to that of eighteen years; but all minors attain their majority by marriage." Authorities are cited to the effect that when children lose the settlement of their father. under the poor laws by contracting some relation so as permanently and wholly to exclude the parental control by acquiring a new settlement, they are said to be emancipated." The legal proposition goes to what constitutes emancipation; but the appellant seems to rely on the incidental fact that it shows the settlement of a minor independent of that of his father,—that is, that such a fact may be. That might be true in this state. Suppose a minor is bound as an apprentice or servant under subdivision 7, of section 1352, he would acquire a new settlement, and the effect would be emancipation. It is an exact application of the law cited. But it does not follow that, because a

new settlement results in emancipation, emancipation results in a new settlement, or one independent of the father. We think the district court did not err in holding that the legal settlement of Finn was in the defendant county, and, hence, that it was not error to strike from the stipulation.

II. The amount of the plaintiff's claim against the defendant county was three hundred and sixty-three dollars and fifty cents, of which amount the plaintiff paid to one Dr. McAllister, for medical services, the sum of two hundred and ninety-seven dollars. The allowance to Dr. McAllister was allowed and paid by the plaintiff's board of supervisors without a certificate from the township trustees, as contemplated by Code, section 1366, as follows: "All claims and bills for the support of the poor shall be certified to be correct by the proper trustees, and presented to the board of supervisors, and, if they are satisfied that they are reasonable and proper, they are to be paid out of the county treasury." The district court, in effect, held that such certificate was not essential to the plaintiff's right of recovery, and instructed the jury that the plaintiff was entitled to recover the reasonable charges and expenses, as shown by other evidence in the case; and this is a ground of complaint, and in presenting the point it says: "What we claim is that we are entitled to certain official evidence that the services were rendered, and that the charges were reasonable and proper. The law in support of the appellant's theory is Code, section 1366, which provides that "all claims and bills for the care and support of the poor shall be certified to be correct by the proper trustees, and presented to the board of supervisors," etc. In *Sloan v. Webster Co.*, 61 Iowa, 738, it is held that a certificate in conformity to the section is essential to the plaintiff's right of recovery,— that is, that the absence of such a certificate is a legal ground of refusal. The question before us in this case is, is the section a limitation on the right of the board of supervisors to allow a claim without such certificate?

2. CARE of pauper: payment of expense for another county: certificate of trustees.

The query is definitely answered in the negative in *Collins v. Lucas Co.*, 50 Iowa, 448, where it is said that the board "may waive the trustees' certificate if satisfied of the truth of all the certificate would show." This holding the appellant does not question, but insists that Clay county had no right to waive such proofs for the defendant county. The law which is the basis of the plaintiff's right of action is found in Code, section 1358, as follows : "The county where the settlement is shall be liable to the county rendering relief for all reasonable charges and expenses incurred in the relief and care of a poor person." We are unable to discern a reason why the board may not waive the trustees' certificate in a case where. the relief furnished is on behalf of another county, as well as where it is furnished to one having a settlement in that county. The measure of plaintiff's right of recovery is not what is paid for relief, but for reasonable charges and expenses. The defendant county would not be bound by the certificate of the trustees, nor would the plaintiff county be protected by such a certificate if the amount therein stated was unreasonable. It is not the policy of the law to permit the county furnishing the relief to also furnish the evidence by which the amount of its recovery is to be .determined. We think the ' court did not err in its manner of submitting the question to the jury.

III.  The defendant asked the court to instruct the jury that "before the trustees were authorized to extend aid the person must make application for relief to said trustees, and they must determine that he is a proper subject for relief," etc. The claim is based on Code, section 1365, which provides : "The poor shall make application for relief to the trustees of the township where they may be, and if the trustees are satisfied that the applicant is in such a state of want as requires relief at the public expense they may afford it," etc. It is said that there is no evidence that John Finn ever made application to the trustees for relief. There is, however, evidence that one

3. ——: application for aid.

John Mates made application for him, and that the trustees ordered the relief to be furnished. Such an application is sufficient under the law.

IV. There is a complaint that under the evidence the charges of Dr. McAllister are shown to be too high, in that he charged the county full prices for visits to Finn, when he had other patients in the same locality. The question of the reasonableness of the charges was submitted to the jury, and under the state of the evidence we are not warranted in interfering.

The judgment is AFFIRMED.