MONROE COUNTY v. JOHN ABEGGLEN, Appellant.

**Appeal:** PRESERVATION AND CONSIDERATION OF EVIDENCE. Evidence
1   taken upon the trial which was in no manner preserved by the
    bill of exceptions, as required by statute, is not a part of the
    record, and will not be considered upon appeal.

**Paupers:** LIABILITY OF PARENT FOR SUPPORT: EVIDENCE. Before a
2   parent can be compelled to support an adult child it must be
    shown that such child is unable by reason of physical or men-

tal disability to earn a living by labor. Evidence held insufficient to show disability.

**Liability of grandparents.** By procuring a divorce a father is not 3 thereby absolved from the obligation to support his minor children, and before a grandparent can be held for their support the inability of the parent must be shown.

*Appeal from Monroe District Court.*— HON. ROBERT SLOAN, Judge.

FRIDAY, NOVEMBER 17, 1905.

ACTION to compel the defendant to contribute to the support of Lucy Raybourne, his daughter, and her three minor children. Judgment against defendant, requiring him to pay over for the support of his daughter and her children the sum of $2.25 per week for two years. Defendant appeals.— *Reversed.*

*J. F. Abegglen,* for appellant.

*F. D. Everett,* County Attorney, for appellee.

McCLAIN, J.— With the case is submitted a motion to strike from the files an amended abstract of the appellee, setting forth the evidence of one Victor Raybourne, the di-

1. APPEAL: preservation and consideration of evidence.

vorced husband of Lucy Raybourne, with reference to his inability to ·contribute anything to the support of the three minor children of Lucy Raybourne, who were born to her during the continuance of the marital relations between them; such children being the three children for whose support defendant was required to contribute under the judgment in this case. It appears from the record that the bill of exceptions contains only the evidence taken on the trial of this case during the 2d and 3d days of March, 1904, and that the testimony of Victor Raybourne was not taken until the 10th day of March of that year; such testimony being given after a continuance of the

case, rendered necessary by an amendment to the petition filed after the conclusion of the evidence upon the issue as originally presented, and for the purpose of curing a want of allegation and proof as to the inability of the father of the children to support them. We think the motion must be sustained, for the evidence of Victor Raybourne does not appear to have been preserved in any manner, and therefore it is not a part of the record. There is nothing in the record to show that the witness was examined and his testimony given as set out in appellee's amended abstract. Of course, if the testimony of this witness was not preserved by bill of exceptions or otherwise, it was not a part of the record, and cannot be considered; and the bill of exceptions expressly negatives by its statements the preservation of any evidence taken after the 3d day of March. Without the evidence of Victor Raybourne it does not appear that defendant, the grandfather of the three children of Lucy Raybourne, is liable for their support, for, by Code, section 2217, the grandparent is only liable for the support of his grandchildren in the absence or inability of a nearer relative.

As the case must therefore be reversed and remanded for new trial, it is proper that we should also indicate the conclusion reached on examination of the record, that, even were

2. PAUPERS: liability of parent for support: evidence.

the evidence of Victor Raybourne to be considered, there is no case made for a judgment against defendant as to the support of Lucy Raybourne. The liability of defendant can be predicated only on proof that she is unable, because of physical or mental disability, to earn a living by labor. See Code, sections 2216, 2252. As to her inability to labor, the only evidence is that found in her own testimony, in which she says that she works around for neighbors at washing, sewing, and cleaning house, but that she is not now able to make a living for herself and children, and that she has been receiving assistance from the county. This falls very far short, in our judgment, of such a showing as is necessary to render the de-

fendant liable for her support. She does not establish, by her own testimony or otherwise, any physical or mental disability, and all we have is her statement that in her opinion what she can earn is not sufficient to support herself and children. We do not think that it was the purpose of the statute to render a parent liable for the support of an adult child capable of laboring, who simply finds it impracticable to earn such support for herself and children as she thinks she ought to have.

With regard to the support of the children it is sufficient to say that their father, who is primarily liable for their support, shows himself to be capable of earning a living for

**3. LIABILITY OF GRAND-PARENTS.** himself and a family acquired subsequently to his divorce from Lucy Raybourne, and we are not inclined to the view that the father of a family may, by securing a divorce from his wife, who is the mother of his minor children, and assuming new marital connections and responsibilities, throw upon the grandfather of those children the responsibility of supporting them. The second wife takes the divorced husband *cum onere,* as it were, and does not acquire prior claim to his earnings as against the children by a former marriage. The defendant is shown to be 65 years of age, without income, save $400 per year, which he derives from the rental of 204 acres of land, which is incumbered with a mortgage of $2,000. He has no other property, and after paying the interest on the mortgage, the taxes, insurance, and necessary repairs he has left less than the amount per year which he is ordered to pay for the support of this daughter and her children.

It seems to us that on the record the judgment is wholly unwarranted and unjust, and it is therefore, *reversed.*

WEAVER, J. (dissenting).— The proposition in the foregoing opinion that the "liability of the defendant can be predicated only on proof that she [defendant's daughter] is unable, because of physical or mental disability, to earn a

living by labor," is, in my judgment, a sacrifice of the plain spirit and intent of the statute to the bare letter of a single clause, and works a defeat of the humane purpose which the Legislature sought to promote.

As I view it, the statutory liability of a person for the support of an indigent relative (providing, of course, that such person be found financially able, and related within the prescribed degree) arises the moment such relative becomes a public charge, unless there be others of nearer kin from whom such support can be enforced.   If the defendant's daughter and her children are shown to be proper subjects for relief at the hands of the county, then the county may, in turn and at once, call upon her relatives in the manner prescribed by the statute to assume the burden.   It is doubtless true that, as to the young children, their father and mother are first chargeable with their support; but when it is shown that the mother herself is destitute, and unable by herself to provide a maintenance for them, and that the divorced father resides in another county, has another family on his hands, is impecunious, and that a judgment against him would be utterly unavailing, then I hold that the duty of the county to extend relief is clear, and the right of the county to call upon other relatives, who may be able to respond, is perfect.

If this be not the case, and the mere fact that a destitute child has an able-bodied parent takes it out of the category of ", poor persons," within the meaning of the law, without reference to the question whether the liability of such parent can be effectively enforced, then the existence of a father or mother in another State, or across the seas, or in the penitentiary, or in the army of able-bodied tramps who infest the country, is all that need be shown to support an excuse for leaving the child to starve.   Surely such was not the intent of the law.   It is true that the statute defines a poor person as one who " has no property exempt or otherwise and is unable because of physical or mental disability to earn a living

by labor." Code, section 2252. If this be literally and strictly construed, then, as long as the poor person has a rag of exempt clothing or a morsel of exempt food, though without a farthing with which to replace these necessities of life, or as long as he or she is able to work for a living, even though there be no work or insufficient work to be had, neither the county nor the more opulent family relatives are under any legal duty or obligation to extend relief.

That such destructive literalness of interpretation is not to be indulged this court, in common with many others having occasion to pass upon similar statutes, has already held. In *Hardin County v. Wright County,* 67 Iowa, 127, the plaintiff county, having furnished relief to the family of one Hutchinson, whose legal settlement was in the defendant county, brought suit to recover the expenses thus incurred. The claim was resisted because it appeared that Hutchinson in fact had property to the amount of $1,000, though not within the jurisdiction of either county, and was not, therefore, a poor person, within the meaning of the law; but this court reversed a judgment for the defendant, saying: "It does not follow that, because the applicant may have some property, his condition is not such as to require relief. Take the case at bar. Here was a large family. Some of them doubtless were helpless, even in a state of health. The head of the family and several of the members were stricken down by a serious sickness, and sickness among them continued for six months. They had recently removed to the place where they were taken sick, and were probably among comparative strangers, and may have been without money or credit. Yet the fact that they had $1,000 worth of property somewhere in the world did not preclude the possibility that they were proper subjects for relief."

It has been held by the Supreme Court of New Hampshire that one is to be deemed a pauper when he " cannot relieve his immediate wants without disposing of property which is essential, and which, if parted with, must be im-

mediately replaced to enable him to live." *Litchfield v. Londonderry,* 39 N. H. 252. In the case of *Poplin v. Hawke,* 8 N. H. 305, the same court says that when a man with a house and little real estate is, by sickness or other accident, reduced to want, he is not to be compelled to sell his house and clothing and turn himself and family out of doors, sick and naked, in order to entitle himself and his family to relief. " It is not the interest of those who may be chargeable with his support that he should be compelled to do this." So, also, it is said that when a poor person is sick and needs the assistance of his wife, who is otherwise able to maintain herself, both may, by the necessity of such assistance, be regarded paupers, and entitled to relief. " If there is any more unexceptionable or meritorious cause of pauperism than this, it is unknown to us. The wife necessarily became a pauper, unless it became her duty to desert her husband on his deathbed, an act which we should not require of her, even though it should expose the defendant town to the necessity of her maintenance while in the discharge of such a duty." *S. Hampton v. H. Falls,* 11 N. H. 134. In a case where a father was able to support himself, but was unable to support his wife and children, he was held to be a poor person or pauper, under the meaning of the law. *Poland v. Wilton,* 15 Me. 363. To the same effect see *Wallinford v. Southington,* 16 Conn. 435; *New Hartford v. Canaan,* 52 Conn. 158; *Fish v. Perkins,* 52 Conn. 203.

Now, take the case at bar. The defendant's daughter may have been able to support herself, had she been free to perform ordinary domestic service, but with several small children, not yet able to care for themselves, and dependent upon her for shelter, nurture, and oversight, it goes without saying that the labor and service which a country neighborhood affords to one so situated and reasonably within her power of performance may well have been wholly inadequate to keep herself and her little ones from want. If, in the case above cited, the able-bodied wife, who is prevented from

earning her living by the necessity of caring for her sick husband, shows an " unexceptionable and meritorious cause of pauperism," surely less cannot be said of the mother, whose ability to provide for herself is lessened by the care of her infant children.

Nor is it any answer to say that the father, though divorced from the mother, is in duty bound to support these children. He may be under obligation to support them, but he does not do it, and it is affirmatively shown that he is not in a financial condition which would render legal proceedings to enforce that obligation of any avail whatever. It is not for the court to inquire into the cause of the poverty of this woman and children. It is the fact of helpless poverty, and not its cause or the moral responsibility of the indigent person or of others for existing conditions, of which the law inquires. It may be unnatural and reprehensible in the father of these children, even though himself, poor and embarrassed by other obligations, to refuse contribution to their support; but it is scarcely less unnatural in the defendant, who, though not wealthy, is at least in comfortable circumstances, to refuse the comparatively trifling aid which would enable his daughter and young grandchildren to avoid becoming public charges.

As to the facts in the case at bar it must also be borne in mind that the action is at law, and we are required to consider the testimony in its most favorable aspect in support of the judgment of the trial court. Moreover the printed record does not, in my judgment, contain any showing or claim that all the testimony has been properly preserved by bill of exceptions, or that we have it all before us.

I think the judgment appealed from ought to be *affirmed*.