HAMILTON COUNTY, IOWA, v. FRANK HOLLIS, Appellant, and FRED HOLLIS.

Counties: SUPPORT OF POOR: RECOVERY OF EXPENDITURE: PLEADING. A petition alleging that a county charge was furnished food, clothing, medicine and medical attendance at the expense of the county for a specified time and price per week, to which was attached an account for board, washing, care, medical attendance and medicine for the same time and price, should be treated as presenting a cause of action for the amount expended rather than for the reasonable value of the support furnished, as the account merely made the petition more specific.

Same. The county is not limited in its recovery for support of the poor to money actually paid out, but may recover of the indigent person, his estate, or of those by statute liable for his support, such sums as it has expended for relief and support at the poorhouse or elsewhere.

Same: EVIDENCE OF AMOUNT DUE. The mere fact of difficulty in determining the amount expended in support of each individual at a county poor farm will not affect the liability of those primarily responsible therefor; and in the absence of evidence to the contrary the expense will be presumed to have been the reasonable value of maintaining each, and evidence of such reasonable value is admissible at tending to prove the amount due.

Same: APPLICATION FOR SUPPORT. It is not necessary that application for the support of an indigent person at county expense be made by the recipient of the bounty, it may be made by another.

Same: WHO ARE POOR PERSONS. A poor person, within the contemplation of the statute relating to their support at public expense, is one who has no property which can aid in his support or out of which funds can be realized for his maintenance; so that an aged couple having only the life use of a small, out of repair dwelling, with no means and physically unable to support themselves are poor persons within the meaning of the statute.

Same: RECOVERY BY COUNTY. A county is not precluded from re-

6  covering of the relatives of a poor person the expense of his
support at the poor farm because their liability has not been
first adjudicated as provided by Code section 2219.

Same: SUPPORT OF SOLDIERS OF THE CIVIL WAR: LIABILITY OF RELATIVES.
7  Where the necessities of a soldier of the Civil War and his
widow require an expenditure greater than that provided by
Code section 2230, they may be maintained at the county poor
farm when they voluntarily go there and remain, and their
relatives chargeable with their support are liable to the county
therefor.

*Appeal from Hamilton District Court.*—HON. W. D.
EVANS, Judge.

TUESDAY, MARCH 9, 1909.

ACTION for money expended in the care of defendant's
parents. Verdict was returned in favor of Fred Hollis by
the direction of court and against Frank Hollis on sub-
mission to the jury. Judgment was entered thereon, and
Frank Hollis appeals.—*Affirmed.*

*D. C. Chase* and *Wesley Martin,* for appellant.

*A. N. Boeye* and *J. M. Blake,* for appellee.

LADD, J.—This is an action by the county against de-
fendants for money expended in the maintenance of their
father and mother at the poor farm. The parents had
lived in a small house with two lots in Homer, and had
been receiving $4 per month from the county for several
years. They were about eighty and seventy-eight years of
age, respectively, both feeble and childish, and able to do
little. They were taken to the poor farm September 20,
1903, and remained there until June 14, 1906, when the
woman died. He left the following day. The evidence
tended to show that the expense of their maintenance
and care was from $1.75 to $3.50 per week. Several er-

rors are assigned, but only those touched in the brief or argument will be considered.

I.   The petition alleged that Hollis and wife were furnished food, clothing and medicines and medical attendance at the expense of the county during one hundred and forty weeks at $3.50 per week, aggregating $980, "which plaintiff, Hamilton County, expended for their use and benefit." To this petition was attached an account "for board, washing, care, medical attendance, and medicine" for that time at the same price each per week. Appellant argues that in view of this account the action should be treated as for these items rather than for the money expended therefor by the county. As the account is made a part of the petition, it should be regarded merely as making more specific its averments. From both it clearly appeared that the action was for the amount expended for the items mentioned, rather than for their reasonable value.

1. COUNTIES: support of poor: recovery of expenditure: pleading.

II.   Appellant urges, however, that the county can not recover save for money actually expended and directly paid out for the relief or support of the poor. The statute under which this action was brought reads: "Any county having expended any money for the relief or support of a poor person, under the provisions of this chapter, may recover the same from any of his kindred mentioned herein, from such poor person should he become able, or from his estate; from relatives by action brought within two years from the payment of such expenses, from such poor person by action brought within two years after becoming able, and from such person's estate by filing the claim as provided by law." Section 2222, Code. Among the kindred made liable by this section in connection with section 2216 of the Code are the children. These statutes ought not to be given the narrow construction contended for. "The relief may be either in the form of food, rent or clothing, fuel and lights, medical

2. SAME.

attendance or in money." Section 2230, Code. It is the money expended in furnishing such support or relief which may be. recovered under the section quoted. If it has been expended by the county for the relief or support at the poor farm, or elsewhere, it is as plainly within the language of the statute as though paid directly to the indigent person. Nor does the provision that the inmates be required to perform work suitable to their bodily condition militate against this interpretation, though this may have some bearing in ascertaining the amount the county has expended in their behalf, a point not necessary to be considered at this time.

III. As several persons usually are maintained at the poor farm, some difficulty may be experienced in ascertaining the portion expended for the support of each person. This alone will not justify the denial of relief to the county against persons primarily liable. It may be presumed, in the absence of evidence to the contrary, to have paid out the reasonable value of maintaining each person at the poor farm, and we think evidence of such reasonable value was admissible as tending to prove the money expended in their behalf.

3. SAME: evidence of amount due.

IV. The suggestion that no application was made for support such as is exacted by section 2234 is unfounded. The evidence was to the effect that Dr. Rogers directed the attention of the township trustees to the condition of these people and insisted that they be taken care of. It is not necessary that application be made by the recipients of the public bounty. *Clay County v. Palo Alto County,* 82, Iowa, 626.

4. SAME: application for support.

V. The appellant insists that his parents were not "poor persons" within the meaning of the statute. Section 2252 of the Code declares that: "The word 'poor' and 'poor persons' as used in this chapter, shall be construed to mean

5. SAME: who are poor persons.

those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities to earn a living by labor; but this section shall not be construed to forbid aid to needy persons who have some means, when the board shall be of opinion that the same will be conducive to their welfare and the best interests of the public." The persons receiving succor in this case were without property, save they were entitled to the use of the house and two lots at Homer. This property had been conveyed by them to a daughter some days prior to being taken to the poor farm, but they reserved the use for life. The house was one story with two small rooms and kitchen, out of repair, and its use was of no value to them; as they were unable to care for themselves. The statute, fairly construed, means that a person to come within the class mentioned must be without property which can aid in his support or out of which funds may be realized for his maintenance. See *Hardin County v. Wright County,* 67 Iowa, 127. The parents were within the class defined.

VI. No fraud was practiced on the parents in bringing them to the poor farm. They went there voluntarily, though on the expectation that they would soon return, and remained there on their own volition. The

**6. SAME:** recovery by county.

contention that the liability for the support of a poor person by relatives must be first fixed under section 2219 of the Code was disposed of some fifty years ago in *Boone County v. Ruhl,* 9 Iowa, 276.

Hollis was a soldier in the late Civil War, and it is argued that taking him to the poor farm was in violation of section 2231 of the Code, which provides that: "No

**7. SAME:** support of soldiers of the Civil War: liability of relatives.

person who has served in the army or navy of the United States, or their widows or families, requiring public relief shall be sent to the poorhouse when they can and prefer to be relieved to the extent above provided,

and other persons and families may, at the discretion of

the board also be relieved." The relief mentioned above is that furnished under section 2230 of the Code, which limits the trustees to the expenditure of $2 per week for each person. Whether the necessities of Hollis and wife required more than this, and whether they voluntarily went to the poorhouse, was submitted to the jury under appropriate instruction. This was correct interpretation of the law, and, if there has been omission of duty, the fault was not of the trustees. See sections 431, 432, Code.

The record is without error, and the judgment is *affirmed*.

Evans, C. J., took no part.