BREMER COUNTY, Appellee, v. WILLIAM SCHROEDER, Appellant.

**APPEAL AND ERROR:** Trial de Novo—Action Essentially at Law. 1 An action which is essentially at law, and so tried to the court under a specific waiver of a jury, is not triable *de novo* on appeal. (See Book of Anno., Vol. 1, Sec. 11433.)

**PAUPERS:** Liability of Relatives—Conditions Precedent. In order for 2 a county to recover of a son for support rendered to the pauper father, it is not necessary, as a condition precedent, that the township trustees first make application to the district court and obtain an adjudication of the son's liability.  (Sec. 5302, Code of 1924.)

**OFFICERS:** Rights, Powers, and Duties—De-facto Trustees. The 3 authority of de-facto township trustees may not be questioned in a collateral proceeding.

**PAUPERS:** Liability of Relatives—Application—Sufficiency. It is not 4 necessary that a poor person *personally* make application to the township trustees for support, in order to render the son liable for support furnished by the county.

**PAUPERS:** Liability of Relatives—Absence of Formal Order of Com- 5 mitment. The fact that a poor person was admitted to the county home without any formal written order, as required by statute (Sec. 5343, Code of 1924), or without the making of any record in relation thereto, does not relieve the son of such person from liability for support furnished such poor person in such home.

**PAUPERS:** Liability of Relatives—"Poor Person" Defined. A person 6 who is admittedly physically and financially unable to support himself is a "poor person," when it appears that he is sent to the county home by the township trustees in the exercise of a wise discretion; and especially is this true when the finding would be justified that the relatives had peremptorily refused longer to support such person.

PAUPERS: Liability of Relatives—Limitation on Recovery. The statu-
7  tory provision that a county which expends any money for the relief
of a poor person may recover the same from specified relatives by
action brought within two years "*from the payment*" of such ex-
pense limits the recovery to whatever amount has been actually
paid *during the two years* immediately preceding the beginning of
the action.

Headnote 1: 4 C. J. p. 726.  Headnote 2: 30 Cyc. p. 1151.  Headnote
3: 29 Cyc. p. 1395 (Anno.)  Headnote 4: 30 Cyc. p. 1151.  Headnote 5:
30 Cyc. p. 1154 (Anno.)  Headnote 6: 30 Cyc. pp. 1064, 1066.  Headnote
7: 30 Cyc. p. 1159.

*Appeal from Bremer District Court.*—M. F. EDWARDS, Judge.

### DECEMBER 15, 1925.

ACTION by the county to recover from a son the expense of
keeping, caring for, and burying his father, an inmate of the
county poorhouse. From a judgment for plaintiff, the defend-
ant appeals.—*Modified and affirmed.*

*Sager & Sweet,* for appellant.

*Dawson & Wehrmacher* and *H. L. Leslie,* for appellee.

VERMILION, J.—The action is by the appellee county to re-
cover of appellant the amount alleged to have been expended by
the county in boarding and keeping A. B. C. Schroeder, appel-
lant's father, at the county poor farm, and in furnishing him
with medical attention and burying him. It is not disputed that
the father was an inmate of the county farm from December 11,
1915, to his death on March 2, 1919, or that the amounts claimed
were expended by the county in keeping him at the poor farm
and in securing medical attention for him and for his burial.

I.   It is insisted by appellant that the action is in equity,
and is triable here *de novo*. On the contrary,
the petition was entitled in law, the action was
essentially an action at law for the recovery
of a money judgment only, and a jury was ex-
pressly waived by the parties.

1. APPEAL AND
ERROR: trial *de
novo*: action
essentially at
law.

II.   Appellant complains that no application was made to

the district court by the township trustees for an order compelling appellant to maintain his father, as provided for in Sec-

2. PAUPERS: liability of relatives: conditions precedent.
tions 2218 and 2219, Code of 1897 (Sections 5302, 5303, and 5304, Code of 1924). It was not necessary that appellant's liability be first fixed under these sections, in order for the county to recover. *Boone County v. Ruhl,* 9 Iowa 276; *Hamilton County v. Hollis,* 141 Iowa 477.

III. It is insisted that there was no proof that those who purported to act as township trustees in removing A. B. C. Schroeder to the county poor farm were such trustees, or ever

3. OFFICERS: rights, powers, and duties: de facto trustees.
legally qualified as such. The evidence shows that they were holding the office of trustee, and were acting as such with the acquiescence of the public. They were, therefore, at least trustees *de facto.* The acts of the officers *de facto* are as valid and effectual, where they concern the public or the rights of third persons, as though they were officers *de jure,* and their authority to act cannot be questioned in collateral proceedings. *Stickney v. Stickney,* 77 Iowa 699; *State v. Powell,* 101 Iowa 382; *Metropolitan Nat. Bank v. Commercial St. Bank,* 104 Iowa 682, and cases there cited.

IV. It is said that there was no application to the trustees for relief of A. B. C. Schroeder as a poor person, as required by Section 2234, Code of 1897 (Section 5328, Code of 1924).

It is settled that the application may be made by another than the person to be relieved. *County of Clay v. County of Palo Alto,* 82 Iowa 626; *Hamilton County v. Hollis,* supra.

4. PAUPERS: liability of relatives: application: sufficiency.
There was undisputed testimony that A. B. C. Schroeder asked one Wernicke to help him; that he could not talk the American language very well, and wanted him to go with him to see the trustees, because he was freezing to death and had no wood or fire; that Wernicke so informed the trustees, and they visited appellant and his father; that, after being informed that appellant had said "he wouldn't take care of the old gentleman,—that he was through with him,"—the father said he would have to go to the county farm. It is clear that there was sufficient application by and in behalf of the father for public relief.

V. It is also said that there was no written order by the

township trustees admitting A. B. C. Schroeder to the poor-
house, as required by Section 2244, Code of 1897 (Section 5343,

5. PAUPERS: lia-
bility of rela-
tives: absence
of formal
order of com-
mitment.

Code of 1924), providing that:

"No person shall be admitted to the poor-
house except upon the written order of a town-
ship trustee or member of the board of super-
visors, * * *."

The steward of the poor farm might have refused to receive
Schroeder as an inmate, in the absence of a written order; but,
after he had received him, and after the county had furnished
him support there, with full knowledge on the part of the board
of supervisors, we fail to see how the fact that there was no
written order for his admission in any way affects the county's
right to recover from one liable for his support the amount so
expended. In *Collins v. Lucas County,* 50 Iowa 448, where a
physician sought to recover of the county for services rendered
to a pauper at the request of the trustees, and it was insisted
that his bill was not certified by the trustees to be correct, it
was said that it was competent for the board to waive the trus-
tees' certificate, if satisfied of the truth of all that the certificate
would show. In *County of Clay v. County of Palo Alto,* supra,
which was an action by the county furnishing relief, to recover
therefor from the county of the pauper's settlement, *Collins v.
Lucas County,* supra, was followed, and it was held that such a
certificate was not essential to the right to recover the reason-
able costs and expenses so incurred, from the county of his set-
tlement. These authorities are, in principle, controlling here.

The right of the county, under Section 2222, Code of 1897
(Section 5309, Code of 1924), is to recover any money expended
for the relief or support of a poor person under the provisions
of the chapter relating to the support of the poor, from any of
his kindred liable therefor. The question upon the county's
right to recover is whether the person relieved was a poor per-
son, within the contemplation of the statute, whether the county
expended money for his support, and whether the defendant is
one who is made liable by statute; not whether the county might
have refused relief because some requirement of the statute as
to the manner in which application should be made, or the relief
furnished, was not complied with.

It being·assumed that A. B. C. Schroeder was a "poor person," under the statute, the question, as said in *Polk County v. Owen*, 187 Iowa 230, becomes one of paymaster: Who shall maintain him,—his son or the public?

VI. What has been said is also applicable to the contentions that there is no record of the action of the trustees; that no notice was given the board of supervisors by the trustees of their action in sending Schroeder to the poorhouse; and that there is no record of action by the board of supervisors upon tj.e matter.

The absence of a record of the action of the trustees authorizing relief to a pauper and warning him to return to the county of his settlement was held, in *Bremer County v. Buchanan County*, 61 Iowa 624, to be no obstacle to a recovery by the county furnishing relief, from the county where the pauper had a legal settlement. See, also, *Tatlock & Wilson v. Louisa County*, 46 Iowa 138, and *Ferguson v. Davis County*, 57 Iowa 601, as to the lack of necessity for a record ·of the action of the board of supervisors. It clearly appears that the board of supervisors had notice that Schroeder was being cared for in the poorhouse. It was said in *Mansfield v. Sac County*, 60 Iowa 11:

"The only construction consistent with a humane and enlightened policy is to hold that, when the trustees authorize aid to be furnished to a poor person, it may be continued, if done in good faith, until the board of supervisors otherwise order * * *."

VII. The chief contention of appellant is that his father was not a "poor person" or ln destitute circumstances, within the meaning of the statute. A. B. ·C. Schroeder was about eighty years of age at the time he was taken to the poor farm. There is no claim that he was possessed of any property, or that he was able to support himself by his own labor. But it is insisted that, prior to the removal of the father to the poor farm, appellant had supported and cared for him suitably and adequately for many years, and was willing to continue to do so; that the township trustees did not act in good faith and in the proper exercise

6. PAUPERS:· liability of relatives: "poor person" defined.

of their discretion, but acted without authority in removing him to the poor farm.

It appears without dispute that the father of appellant, at the time he was taken to the poor farm, had been living for some fifteen years alone in a small house on appellant's farm, about forty rods from appellant's residence; that his house was cared for and his washing and mending were done by members of appellant's family; that he took his meals at appellant's table, and when he was not able to do so, they were taken to him; that appellant furnished his clothing and gave him five or six dollars each month, and furnished him firewood. There is testimony that the father complained that he was unable to care for himself, or to go to appellant's for his meals.

It appears without dispute that the township trustees, on receiving complaints that the father was not being properly cared for, visited him and heard his complaints in person; and that two of them visited appellant. There is a sharp conflict in the testimony as to what occurred on the latter visit. There is testimony that, on being informed of the complaints, and that the father wished to be taken to the poor farm, the appellant said emphatically and profanely, and referring to his father by a vile name, that they could take him wherever they pleased, and do what they pleased with him; that he was through with him. This was denied by appellant and his daughter. Appellant testified that the trustees told him they were going to take the father to the poor farm, and that he replied that he did not think that was right; that he could continue to support his father; and that he said, "If you take him away to the poor farm, then I am done with him." He is corroborated by his daughter. Appellant admits that he was subsequently told by a member of the board of supervisors that he should take his father back from the poor farm, and that he told him:

"I had said I was through, if the trustees took him away; and I was."

It may be that, prior to that time, appellant had properly supported and cared for his father, and that the latter's complaints were not justified by the facts. But it is also true that the fact that he had made such complaints and called upon the trustees did not at all justify appellant in refusing, if he did,

to thereafter support his father. In *Polk County v. Owen,* supra, where it was claimed that a son was guilty of many unpleasant and disgusting practices in the home of his parents, and that he left their nome to carry out a conspiracy to obtain a livelihood by begging, we said:

"We may assume the parents have at all times been willing and able, and are so now, to give this son and his family proper support in the home of the parents if the son will refrain from such misconduct. If all this be assumed, how is that material as between the parents and the public? If he engaged in such conspiracy, but was indigent at the times in question, such conduct on his part cannot relieve the parents, as against the public, from supporting the son. That he engaged in such a conspiracy is as good a reason for denying relief by the public as for denying him relief from father and mother. How can that be material, as between the parents and the public? If the son be indigent, is a public charge, or about to become one, someone must furnish him help, no matter how bad a son he has been and is, and no matter how impossible he has made it for his parents to maintain him in their home. He may not be allowed to starve in the streets, even if his condition is due to his own misconduct, and though his own contumacy alone stands in the way of his being fully relieved by his parents. The question finally becomes one of paymaster. Who shall maintain this indigent bad son,—the parents or the general public?"

The trustees did no more than their duty when they investigated the complaints that had been made to them, and the application of the father to be taken to the poorhouse, by interviewing the father who complained and the son of whom he complained. If, merely upon learning of the complaints, the appellant refused to further support his father, they, in the performance of their duty and in the interest of humanity, could do no less than they did. Without the support previously furnished by the appellant, there can be no question but that the father was a "poor person," according to every definition of the term, and a fit subject for public charity. Deprived of that, he was without food or shelter, and unable to maintain himself by his own efforts. At this point, the question is purely

one of fact. The trial court expressly found that the trustees acted in good faith and in the exercise of a wise discretion in taking the father to the poorhouse. This finding has the force and effect of the verdict of a jury, and has ample support in the testimony that appellant declared unconditionally that he would no longer support his father.

VIII. Section 2222, Code of 1897, provides:

"Any county having expended any money for the relief or support of a poor person, under the provisions of this chapter, may recover the same * * * from relatives by action brought within two years from the payment of such expenses, * * *."

Under this statute, it is contended, the county could in no event recover for any money expended prior to two years before the commencement of the action.

The statute is one of limitation. The county's claim has every attribute of a continuous, open, current account, the cause of action upon which accrues on the date of the last item (Section 3449, Code of 1897 [Section 11011, Code of 1924]); and it is the claim of appellee that it is such an account, and that, since the action was commenced within two years after the date of the last item, a recovery may be had for the full amount.

7. PAUPERS: liability of relatives: limitation on recovery.

It is to be observed, however, that the limitation is upon the right to recover any expense paid more than two years before the commencement of the action, not, as in the case of the general statute of limitations, upon the right to recover upon a cause of action accruing more than the specified length of time before action. This difference is, we think, significant and controlling, and that the county's position cannot be aided by the fact that, under the general statute of limitations, the cause of action upon an open account accrues on the date of the last item. The plain language of the statute is that the county can recover for expenses paid within two years before the action is commenced. The liability is purely statutory, and is not to be extended beyond the plain import of the statute.

The action, so far as the record discloses, was commenced October 29, 1919. The county can only recover for the support furnished A. B. C. Schroeder after October 29, 1917, until his death on March 2, 1919, or sixteen months and four days,

amounting, at the rate per month claimed, to $258.12, and for the other items paid within the two years, amounting to $122, or a total of $380.12, with interest as allowed in the judgment.

So modified, the judgment will be affirmed. Appellant will pay three fourths of the costs in this court. *Modified and affirmed.*

Faville, C. J., and Stevens and De Graff, JJ., concur.