Wright County, Appellant, v. Thomas A. Hagan, Executor, et al., Appellees.

No. 40168.

June 23, 1930.

Robert D. Blue, County Attorney, for appellant.

Sylvester Flynn, for appellees.

Wagner, J.—This action at law was begun on July 16, 1928, to recover a judgment against Tillie M. Heskett for the amounts expended by the county for the care and support furnished Ellen  Lucksinger, adult daughter of said original defendant, in the Hospital for the Insane at Cherokee, and in the Home for the Feeble-minded and Hospital for Epileptics at Woodward. Before the trial of the case, Tillie M. Heskett died testate, and Thomas A. Hagan, the executor of her estate, was substituted as party defendant. The action was aided by a writ of attachment, which was levied upon certain real estate. Sevilla Mary Fellman and Stella Irene Brassfield, daughters of Tillie M. Heskett, inter-

vened in the action, claiming as their property, under deeds executed and delivered by their mother in July, 1924, the real estate upon which the writ of attachment had been levied.

The plaintiff alleges in its petition, in substance, that, on or about the 21st day of January, 1918, the said daughter of Tillie M. Heskett was committed by the commissioners of insanity of the plaintiff county to the Hospital for the Insane at Cherokee, where she was maintained and kept until the year 1921, when she was transferred to the Home for the Feeble-minded and Hospital for Epileptics at Woodward; that, during the period of her commitment, the plaintiff county has provided for the said ward, at the aforesaid institutions, the necessaries for her care and support, in the amount of $1,856.71, as shown by the itemized statement of account thereto attached. Said itemized statement gives the dates and amounts of the quarterly payments made by the county in March, June, September, and December of each year, the last of said payments having been made March 31, 1928. The plaintiff asks judgment for the entire amount paid.

The defendant executor in one count of his answer pleads a general denial. In another count, he alleges that Ellen Lucksinger was, at all times material to the controversy, the adult daughter of the said Tillie M. Heskett. In still another count, he alleges that whatever claim the plaintiff may have for expenditures actually made for her care and support prior to July 16, 1926, accrued more than two years prior to the commencement of the action, and is barred by the express provisions of Section 5309 of the 1927 Code. The case was tried to the court, without a jury, upon an agreed stipulation of facts, it being stipulated, for the purposes of trial, that, on or about the 21st day of January, 1918, said daughter, an epileptic, who was then about 30 years of age, was duly committed by the commissioners of insanity of plaintiff county to the State Hospital for the Insane, at Cherokee, where she was maintained at the expense of plaintiff county until sometime during the year 1921, when she was transferred to the Home for the Feeble-minded and Hospital for Epileptics at Woodward, and at all times thereafter, was maintained in said latter institution, at the expense of the county; that the amount which the county had expended prior to two years immediately preceding the commencement of the action was $1,827.46, and the amount expended during the period of two years immediately

preceding the commencement of the action was $29.25. It was further stipulated that, at the time when the said daughter was committed to the Hospital for the Insane, she was not employed in any gainful occupation, and had not been so employed for a considerable period prior thereto, and that, at the time of her commitment, and since said time, she has had no property, either real or personal, aside from her clothing and other personal effects. It was further stipulated that the said Tillie M. Heskett, in July, 1924, executed and delivered deeds for the real property claimed by the interveners, upon which the writ of attachment was levied. The daughter Ellen Lucksinger is named as a party defendant, but it is not shown that there was service of notice upon her, and the case was tried only as among the parties named other than the said Ellen Lucksinger.

At the conclusion of the trial, the court found in favor of the plaintiff in the sum of only $29.25, the amount expended by the plaintiff during the two years immediately preceding the commencement of the action, and interest thereon, and established the same as a claim against the estate of Tillie M. Heskett, deceased, and directed the executor to pay the same, together with the costs of suit, and released the real property of the interveners from the lien of the attachment. From this action by the trial court, the plaintiff has appealed.

Since the deceased was not the owner of the real property at the time of the levy of the writ of attachment, the action of the court in releasing said property of the interveners' from the lien of the attachment is clearly right.

Now, what as to the claim of the appellant? The court held that all of plaintiff's claim against the mother was barred by Section 5309 of the Code of 1927, except the amounts expended during the two years immediately preceding the commencement of the action, and found that the plaintiff was entitled to recover from the estate of the mother for the amounts expended during said two-year period. The defendant has not appealed. The appellant contends that said section is not applicable, and that the account upon which it has sued, is a continuous, open, current account, within the meaning of Section 11011 of the Code, and that its cause of action would not outlaw until five years after the date of the last item of the account. This is the proposition upon which the appellant relies for reversal. It

relies upon the following authorities: *Scott County v. Townsley,* 174 Iowa 192; *Jones County v. Norton,* 91 Iowa 680; *Harrison County v. Dunn,* 84 Iowa 328; *Cedar County v. Sager,* 90 Iowa 11,—all of which are actions brought by the county to recover for amounts expended for the support of an insane person.

If the appellant is entitled to recover against the estate of the mother of the ward for amounts expended for the care and support of the adult daughter as an insane person, then said authorities are in point; but the mother is not liable for moneys expended by the county for the support of her adult insane daughter in the aforesaid state institutions. The necessary and legal costs and expenses attending the commitment, care, and support of an insane person committed to a state hospital shall be paid by the county in which such person has a legal settlement. See Section 3581, Code, 1927. Section 3595 of the Code provides:

"Insane persons *and persons legally liable for their support* shall remain liable for the support of such insane." (Writer's italics.)

Section 3471 of the Code, being a part of the chapter relative to the Hospital for Epileptics and School for Feeble-minded, provides:

"All laws relating to the commitment of insane persons to the hospitals for the insane, in so far as applicable, shall apply to commitments of epileptics to said hospital and school."

The appellant contends that, by reason of the aforesaid provisions of the Code, the mother of Ellen Lucksinger is legally liable for her support as an insane person. As to this contention, the appellant is in error. See *Monroe County v. Teller,* 51 Iowa 670. In said case, the county sought to recover from the father the amount of money paid by the county for the keeping of an adult son in the Hospital for the Insane at Mt. Pleasant. In referring to the statute (now Section 3595 of the Code), the court said:

"A father is not *legally bound to support his adult children at common law, nor under the statutes of this state.* They owe him no service, and are as free from his restraint as though there were no kinship." (Writer's italics.)

What is there said, relative to the liability of the father, is equally applicable to the claimed liability of the mother in the instant case. It is, therefore, apparent that the mother and her estate are not liable to the plaintiff county for the money expended by the county for the support of her adult daughter in the aforesaid institutions, as an insane person.

The appellant further contends that the daughter is a poor person, and for that reason the mother is liable for all of the money expended by the plaintiff for her support. The appellant  is also in error as to this contention. As to the property qualifications and the physical and mental condition of the daughter, it may be conceded that the stipulation is sufficient to constitute the daughter a poor person in fact; but it requires more than this, under our statutory law, to make the mother and her estate liable for moneys expended for the support of the daughter as a poor person. Section 5298 of the Code, 1927, provides:

"The * * * mother * * * of any poor person, who is unable to maintain himself or herself by labor, shall * * * relieve or maintain such person in such manner as, *upon application to the township trustees of the township where such person has a residence or may be, they may direct.*" (Writer's italics.)

Sections 5302 to 5304, inclusive, of the Code, 1927, provide that the township trustees may apply to the district court of the county where such poor person resides, for an order to compel the relatives to maintain the poor person; that notice shall be given to the parties sought to be charged; that a hearing shall be held in a summary manner before the court; and that an order shall be made by the court, fixing and prescribing the liability of the relatives, etc. Section 5309 of the Code provides:

"Any county having expended any money for the relief or support of a poor person, *under the provisions of this chapter,* may recover the same from any of his kindred mentioned herein, from such poor person should he become able, or from his estate; *from relatives by action brought within two years from the payment of such expenses,*" etc. (Writer's italics.)

Section 5328, Code, 1927, provides that the poor must make application for relief to the trustees of the township where they

may be. We have held that, where an application for aid has been made to the township trustees by the poor person, or by someone for or in behalf of the poor person,—which application may be rather informal,—and the trustees have acted thereon, then the county may furnish the support and bring action to recover the amount expended for the support without resorting to the procedure outlined in Sections 5302, 5303, and 5304 of the Code, 1927. See *Boone County v. Ruhl,* 9 Iowa 276; *Bremer County v. Schroeder,* 200 Iowa 1285; *Hamilton County v. Hollis,* 141 Iowa 477.

While the appellant strenuously contends that the mother and her estate are legally liable for the money expended by the county for the support of the daughter as a poor person, yet it is apparent that the money expended by the county was for the support of only an insane person, committed as such to the Hospital for the Insane, and that the daughter was not a county charge, under our statutory law relative to the care and support of the poor. The appellant, in his argument, quotes and relies upon Section 5298 of the Code, hereinbefore quoted; yet there was no order or direction in the instant case by the township trustees, and no application to the trustees made by the daughter, or anyone for her, as required and exacted by said section. An application, although informal, by the poor person, or by someone for the poor person, to the trustees of the township where the poor person has a residence or may be, and action thereon, are the requisite initial steps which must be taken before there can be any liability on the part of the mother, father, and other designated relatives, for money expended by the county for the support of the poor person. See Section 5298 of the Code, 1927; *Hamilton County v. Hollis,* 141 Iowa 477; *Bremer County v. Schroeder,* 200 Iowa 1285; *Mansfield v. Sac County,* 60 Iowa 11; *County of Clay v. County of Palo Alto,* 82 Iowa 626; *Monroe County v. Teller,* 51 Iowa 670; *Boone County v. Ruhl,* 9 Iowa 276. It is obvious that, under the statutory law and the supporting authorities, the mother and her estate are not liable for the money expended by the plaintiff county for the support of the daughter, as a poor person.

We have already found that the mother is not liable, under our law, for the money expended for the support of her daughter as an insane person. There is neither allegation nor proof of

her liability as the mother of a poor person. As to whether relatives not legally liable for the support of an insane person committed to the Hospital for the Insane might be made liable if the procedure under our statutory law for support of the poor were followed, we make no pronouncement. Moreover, were the mother liable for money expended for the support of the daughter as a poor person, then, as held by the trial court, the two-year statute of limitations provided for in Section 5309 of the Code, 1927, would be applicable. See *Bremer County v. Schroeder*, 2C0 Iowa 1285. Although the plaintiff, under the stipulated facts and the law applicable thereto, would not be entitled to the relief granted by the trial court, the defendant has not appealed from the establishment of the claim in the small amount of $29.25 and interest thereon, and is bound thereby. There is no merit in the contentions of the appellant

For the foregoing reasons, the judgment of the trial court is hereby affirmed.—*Affirmed.*

All the justices concur.