CHEROKEE COUNTY, Appellee, v. WILLIAM H. SMITH et al.,
Appellants.

No. 42635.

JANUARY 8, 1935.

Whitney, Whitney & Stern, for appellants.

McCulla & McCulla, for appellee.

DONEGAN, J.—In December, 1932, one Mr. Rasmus, who was
the owner of a house in Cherokee in which one Bert Smith and
family lived, reported to Mr. McDonald, the chairman of the board
of supervisors of Cherokee county, that Bert Smith was unable to
pay the rent, and that, unless the rent was paid, he (Rasmus)
would proceed to oust Smith from his premises. Mr. McDonald
told Mrs. Garner, who was the overseer of the poor, and directed
her to investigate the case. A claim for the rent which became
due after the request was made to the board, and also for medical
services rendered the Bert Smith family, was O. K.'d by Mrs. Gar-

ner and paid by the board. In October, 1933, Cherokee county commenced this action against William H. Smith and Mrs. William H. Smith, the parents of Bert Smith, to recover the money thus expended for the support of their son and family. Defendants filed answer admitting that they were the father and mother of Bert Smith, but denied all the other allegations of the petition. Trial was had to a jury, and at the close of plaintiff's evidence the defendants moved for a directed verdict in their favor, which was overruled. . Defendants thereupon rested and renewed the motion, which was again overruled. Plaintiffs thereupon filed a motion for a directed verdict in their favor in the sum of $55, which was sustained. A verdict was returned by the jury as directed, and judgment entered thereon. The defendants appeal.

■ I. One of the grounds relied upon by appellants for reversal is that no application for aid was made to the board of trustees by Bert Smith, or by anybody in his behalf. Section 5328 of the Code of 1931 provides:

"* * * The poor must make application for relief to the trustees of the township where they may be, and, if the trustees are satisfied that the applicant is in such a state of want as requires relief at the public expense, they may afford such relief, subject to the approval of the board of supervisors, as the necessities of the person require, and shall report the case forthwith to the board of supervisors, who may continue or deny relief, as they find cause."

It is admitted that no application was made to the board of trustees in this case. However, the appellee contends that no such application was necessary, because application was made to the overseer of the poor in compliance with section 5321, of the Code, which is as follows:

"* * * The board of supervisors in any county in the state may appoint an overseer of the poor for any part, or all of the county, who shall have within said county, or any part thereof, all the powers and duties conferred by this chapter on the township trustees."

It appears from the evidence that the owner of the house in which Bert Smith was living told the chairman of the board of supervisors that, unless the rent was paid, Smith would have to

get out. The chairman of the board of supervisors reported this to Mrs. Garner, the overseer of the poor, and told her to investigate the case, and she O. K.'d the bills for rent that accrued after the request had been made. It is not explicitly stated in the evidence that the overseer of the poor made any particular investigation at the time she was told of the landlord's demand for the rent. We think, however, that sufficient does appear in the evidence to indicate that she was familiar with the condition of Bert Smith and family, and that her approval of the claims was made pursuant to this knowledge. There is no claim made here that Bert Smith was not a poor person within the provisions of the statute, and the objection made is based upon the purely technical ground that the application was not made in the first instance to the board of trustees. In view of the fact that section 5321 confers upon the overseer of the poor "all the powers and duties conferred by this chapter on the township trustees," and the further fact that the matter was referred to the overseer of the poor and the claims were not paid until O. K.'d by her, we think there was a sufficient compliance with the statutes to warrant the board of supervisors in paying the claims. The whole chapter in reference to the support of the poor was enacted for a humane purpose, and it was not the intention of the legislature that this purpose should be defeated by mere informality in the procedure followed. Clay County v. Palo Alto County, 82 Iowa 626; Hamilton County v. Hollis, 141 Iowa 477; Bremer County v. Schroeder, 200 Iowa 1285; Wright County v. Hagan, 210 Iowa 795.

II. Appellants further contend that the court erred in sustaining appellee's motion for a directed verdict in its favor, because there was no evidence that Bert Smith was a poor person within the meaning of the statute. Section 5297, of the Code of 1931, is as follows:

"* * * The words 'poor' and 'poor person' as used in this chapter shall be construed to mean those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities, to earn a living by labor; but this section shall not be construed to forbid aid to needy persons who have some means, when the board shall be of opinion that the same will be conducive to their welfare and the best interests of the public."

It must be admitted that there is no direct evidence in the record showing that Bert Smith had no property and was unable, because of physical or mental disabilities, to earn a living by labor. There is evidence, however, that after the request was made to the chairman of the board of supervisors, he referred it to Mrs. Garner, the overseer of the poor, and told her to investigate it, that she had knowledge of the condition of the Smith family and approved the claims presented for their relief, and that the bills were paid because the board of supervisors "thought it was to the best interests of the general public to pay the rent as long as he (Smith) had a family and it was in the winter time." There is here no claim that the overseer of the poor or the board of supervisors acted fraudulently, or that Bert Smith was not, in fact, a "poor person" as defined by the statute. The presumption is that the officers charged with the duty of furnishing relief to the poor performed that duty. As stated in Hardin County v. Wright County, 67 Iowa 127, loc. cit. 130, 24 N. W. 754:

"The duty of the township trustees, when applied to for poor relief, is not to be determined by very rigid rules. They must, in the exercise of a wise discretion, grant relief where they judge that humanity requires it. They must, too, oftentimes act promptly and without taking time to make an extensive examination of the applicant's circumstances. Where they act in good faith or without abuse of discretion, their action, in our opinion, is not subject to review."

Under the facts and circumstances appearing in the evidence, and under the provision of section 5297, which states, "but this section shall not be construed to forbid aid to needy persons who have some means, when the board shall be of opinion that the same will be conducive to their welfare and the best interests of the public," we think there was a sufficient showing that Bert Smith was a poor person within the contemplation of the statute. Hardin County v. Wright County, 67 Iowa 127, 24 N. W. 754; Polk County v. Owen, 187 Iowa 230, 174 N. W. 99; Bremer County vs. Schroeder, 200 Iowa 1285, 206 N. W. 303; Hamilton County v. Hollis, 141 Iowa 477, 119 N. W. 978.

III. Finally, appellants contend that the court erred in directing a verdict in favor of the appellee, because there was no evidence as to whether or not the appellants were possessed of property or income and were able to support Bert Smith and

family. The statute under which this recovery is sought is section 5309, of the Code 1931, and is as follows:

"* * * Any county having expended any money for the relief or support of a poor person, under the provisions of this chapter, may recover the same from any of his kindred mentioned herein, from such poor person should he become able, or from his estate. * * *"

Section 5298 of the Code 1931, making parents liable for the support of children, provides:

"* * * The father, mother, and children of any poor person, who is unable to maintain himself or herself by labor, shall jointly or severally relieve or maintain such person in such manner as, upon application to the township trustees of the township where such person has a residence or may be, they may direct."

Appellee contends that, under section 5309, there is no burden imposed upon it to show that the appellants were able to support Bert Smith. It is unquestioned that there is no evidence in the record in regard to the financial ability of the appellants or their ability to earn, and the question thus presented is not without its difficulties.

It will be noted that section 5298 provides that the parents shall relieve or maintain a child, who comes within the contemplation of the statute, in such manner as the board of trustees may direct. Sections 5302 to 5307, inclusive, all have reference to the enforcement by the board of trustees of the liability of parents, children and other relatives to support their poor children, parents, or relatives. Section 5302 provides for an application by the board of trustees to the district court. Section 5303 provides for notice and hearing to be given to the persons to be charged, and that the court may "order any one or more of the relatives *who shall be able,* to relieve or maintain" the poor person. (Italics are ours.) Section 5304 has reference to the scope of the order that the court may enter. Section 5305 has reference to the judgment that may be entered if the support be not rendered as ordered, and to appeal therefrom to the Supreme Court. Section 5306 has reference to abandonment and to an application by the township trustees to the district court for an order to seize the property of the person guilty of abandonment. Section 5307 has reference to

the imposition of a lien upon any real estate of the person charged with the support of another. Section 5308 provides that:

"*In all cases* the party sought to be charged with the support of another may demand a jury trial upon the question of his obligation and *ability* to render such support, * * *." (Italics are ours.)

Appellee contends, however, that the provisions of section 5308 have reference only to the preceding sections under which the action is instituted by the board of trustees to force the relatives to support the poor person; that the provision of section 5308 for a jury trial as to the ability to render support is not applicable to the action authorized in section 5309; and that section 5309 has no reference to the preceding provisions, but is a positive provision that the county, having expended its funds in the support of the poor person, can recover the amount thus expended from the relatives charged with his support without any showing as to their ability to render such support.

It has already been decided by this court that the proceedings by the board of trustees to force the relatives to support the poor person are not a condition precedent to the right of the county to recover under section 5309. The county may recover the money expended for the support of a poor person from his relatives, without any action having been taken by the board of trustees to enforce support by relatives. Boone County v. Ruhl, 9 Iowa 276; Hamilton County v. Hollis, 141 Iowa 477, 119 N. W. 978; Bremer County v. Schroeder, 200 Iowa 1285, 206 N. W. 303. The question here, however, is whether the county, in its action to recover, has the burden of proving that the relatives whom it seeks to hold liable for the support of the poor person have the ability to render such support. It will be noted that the statutes in reference to the board of trustees enforcing support of a poor person by his relatives provide that the court may order "any one or more of the relatives who shall be able" to furnish such support, and that the party sought to be charged has a right to demand a jury trial on the question "of his * * * ability to render such support." It seems quite clear, therefore, that it was the intention of the legislature that, in the proceeding instituted by the board of trustees, no relative should be required to support a poor person without an opportunity to be heard, and unless it were shown that he had the ability to do so. We can see no reason why a person, who may

not have had an opportunity to be heard on this question in the direct proceeding by the board of trustees to compel him to support a poor relative, should be held to an absolute liability for the amount expended by the county regardless of his ability to render the support with which he is charged.

Nor can we agree with appellee's contention that the provisions of section 5308 have reference to the preceding sections only and do not apply to section 5309. The language of section 5308 is that "in all cases the party sought to be charged with the support of another may demand a jury trial upon the question of his obligation and ability to render such support." If this language had been meant to apply only to the proceedings instituted by the board of trustees, it would have been a simple matter to say so. The language, "in all cases", is broad enough to cover the cases brought under section 5309, and is, in our opinion, equally applicable to such cases. Moreover, we think the absurd results to which appellee's contention might lead are sufficient to show that it is untenable. If appellee be correct in its interpretation of the statutes, then we might have a case in which the board of trustees had instituted the proceeding in the district court to compel the parents to support a child and his family, and in which the district court had refused to enter an order for such support because the parents were unable to render it. Nevertheless, under appellee's contention, if the county furnished the support and then sued the parents under section 5309, they would be liable and judgment would be entered against them regardless of their ability. Again, according to section 5309, the county can recover from the poor person himself only in case he becomes able, and, if appellee's contention be correct, the parent or other relative who may not be able to render support is, therefore, under a greater burden of liability than the poor person. We think the burden was on the appellee to prove appellants' ability to render the support for which the county now seeks to recover. See 48 C. J. 518, par. 200; Monroe County v. Abegglen, 129 Iowa 53, 105 N. W. 350; Nixon v. McCoy, 155 Minn. 175, 193 N. W. 40.

It is admitted that there was no evidence as to such ability on the part of the appellants, and the judgment entered by the trial court must, therefore, be reversed.—Reversed.

ANDERSON, C. J., and ALBERT, PARSONS, and RICHARDS, JJ., concur.