HUMBOLDT COUNTY, Appellee, v. FRANK BIEGGER et ux., Appellants.

No. 45981.

JUNE 16, 1942.

REHEARING DENIED OCTOBER 20, 1942.

John H. Mitchell, of Fort Dodge, for appellants.

Melvin Baker and Philip C. Lovrien, both of Humboldt, for appellee.

MITCHELL, J.—The facts in this case were stipulated. It is a law action brought by Humboldt County, Iowa, against Frank Biegger and Mrs. Frank Biegger, parents of J. Keith Biegger, for money expended by Humboldt County, Iowa, for the care and support furnished J. Keith Biegger while he was a patient at the state sanatorium at Oakdale, Iowa, from January 11, 1937, until July 24, 1938. It is agreed that J. Keith Biegger is the son of Frank Biegger and Mrs. Frank Biegger, and that he was admitted to the state sanatorium at Oakdale, Iowa, on January 11, 1937. It is further stipulated that J. Keith Biegger reached his maturity on April 28, 1937, and that at the time he was admitted to the state sanatorium at Oakdale, Iowa, he was a minor child of the said Bieggers. That the amounts paid by Humboldt County, Iowa, to wit, $1,013.55, were for the continuous care and support of J. Keith Biegger from the date of his admission to the state sanatorium until his release or discharge on July 24, 1938.

The only defense raised by the defendants which is argued in this case is that the parents of J. Keith Biegger were in no manner liable for his care and support at Oakdale after he became an adult on April 28, 1937. The lower court decided under the provisions of sections 3401 and 3595 of the 1935 Code (the statutes in effect at the time of his admission to Oakdale) that the defendants were liable for the money expended by Humboldt County, Iowa, for the care and support of J. Keith Biegger from the date on which he entered Oakdale, to wit, January 11, 1937, until the day he was discharged, to wit, July 24, 1938. The defendants have appealed.

The question involved in this appeal is that of the construction to be given to section 3595 of the 1935 Code. Code section 3401 is as follows:

"Patients and others liable. The provisions of law for the collection by boards of supervisors of amounts paid by their respective counties from the estates of insane patients and from persons legally bound for their support shall apply in cases of patients cared for in the sanatorium."

The above-cited section makes Code section 3595 applicable with reference to collections of accounts for care and support furnished to patients at the Oakdale Sanatorium. Code section 3595 of the 1935 Code is as follows:

"Personal liability. Insane persons and persons legally liable for their support shall remain liable for the support of such insane. The county auditor, subject to the direction of the board of supervisors, shall enforce the obligation herein created as to all sums advanced by the county."

The construction of the words "shall remain liable" in section 3595 of the 1935 Code is the problem that now confronts us. The question of liability for the support of persons in state institutions has been before this court a number of times, both under section 3595 of the 1935 Code and its predecessors. We do not find it necessary to cite the earlier cases because this court, in the case of Iowa County v. Amana Society, 214 Iowa 893, 898, 243 N. W. 299, 301, reviews the former cases. In that case, speaking through Justice Evans, this court said, we quote:

"Assuming for the moment that the corporate-Society was liable contractually, and legally bound to its members to support them during life, did such obligation bring the defendant within the terms of Section 2297 as a person 'legally bound?' It will be noted that Section 2297 purported in the first instance to negative any implication that the obligation of the County should operate 'to release the estate of such persons nor their *relatives* from liability for their support.' The foregoing indicated a conception in the legislative mind of *existing* law. This was that in certain cases relatives might be held to a liability for service to a patient. At common law a father could be held for the support of his minor child; and a husband could likewise be held for the support of his wife. These two illustrations meet what appears to be the legislative conception of vicarious liability. This same legislative conception appears in Section 3597, wherein power is conferred upon the board of supervisors to forgive the liability if it be deemed to work a hardship. The evident purpose of that statute was to give power to release not certain classes of persons so liable, but to release all of them.

In conferring power upon the Board to release the estate of the patient and likewise his relatives, there is no suggestion of a reservation of liability as against some nonrelated person. Reading all these statutes together, the interpretation stands out plainly that the only persons within the legislative mind, to be held liable, were such relatives as were liable at common law. The statute did not purport to create or pursue new or other liabilities, which might arise out of contract or out of tort. In our previous consideration of these statutes, we have so interpreted them. In Guthrie County v. Conrad, 133 Iowa 171, we held a father liable at common law for the support and care of his minor son. See also Dawson v. Dawson, 12 Iowa 512. In Wapello County v. Eikelberg, 140 Iowa 736, we held a husband liable for the support of his wife. As against this we have held that a parent is not liable at common law for the maintenance of an adult child. Monroe County v. Teller, 51 Iowa 670. We have also held that a wife is not liable for her husband's support in an insane institution. Blackhawk County v. Scott, 111 Iowa 190. In the latter case the wife was held exempt from liability notwithstanding her statutory liability for family expenses. See also Delaware County v. McDonald, 46 Iowa 170; Jones County v. Norton, 91 Iowa 680.

"In Monroe County v. Teller, 51 Iowa 670, we defined the word 'relatives' as used in Section 1433 of the Code of 1873 to have reference only to those relatives who at common law were legally liable for the support.

"We have also held that the statutory provisions here under consideration trench so closely upon the limits of legislative power that they should be strictly construed. Delaware County v. McDonald, 46 Iowa 170; Monroe County v. Teller, 51 Iowa 670. In the interpretation of these statutes, we have never gone farther than to sustain the liability of the father for his minor son and of the husband for his wife. We deem it clear that the interpretation of the statute should go no farther than its terms.

"In the Monroe County case we said:

" 'The word "relatives," as used in the first clause of the section, and "relatives," as used in the last clause, must be construed to mean the persons from whom the county may

collect such claims; that is, "persons legally bound" for the support of the insane person.' * * *

"In the two cases wherein we have held the defendant liable, we have predicated the liability upon the common-law *status* of the defendant. In the one we held the father liable for the expense incurred for his minor son (Guthrie County v. Conrad, 133 Iowa 171); and in the other we held the husband likewise liable for his wife. The status of the defendant in each case was imposed upon him by common law and not by contract. The status itself was obligatory upon him, and he could not change it, if he would. And it may be added here in support of the first division hereof, that only a *status* was within the legislative mind in the enactment of Section 2297 and its kindred sections; and such was the significance of the repeated use of the word 'relatives' in such section.

"Inasmuch as the plaintiff disclaims a right of recovery upon the contract, we need not consider its failure to show a breach of the contract. By this disclaimer the plaintiff limits itself to the narrow ground that the statute picks up its half-proved cause at the point where a contract of support is shown and carries it to its consummation. To this we answer that the statute purports only to be remedial, and to apply only to a cause of action already existing. It does not purport to create a new cause of action.

"In Jones County v. Norton, 91 Iowa 680, we put the following interpretation upon this statute:

" 'As already stated, there is no common law liability on the part of the defendant, and it is a familiar rule that none will be held to exist under the statute unless expressly provided. The only provision for reimbursing the county is * * * Section 1433, which so far as relates to this question, is as follows: "The provisions herein made for the support of the insane at public charge shall not be construed to release the estate of such persons from liability for their support; and the auditors of the several counties, subject to the direction of the board of supervisors, are authorized and empowered to collect from the property of such (insane) patients any sums paid by the county in their behalf as herein provided." * * * The first of the section does not create a liability, but simply provides that the

provisions made for public support shall not release the estates of such persons from liability for their support. The purpose of this provision is to leave persons who furnished necessary care and support to an insane person, in the absence of care by the county, * * * to their rights under the common law.' ''

Thus we find that this court has continuously held that parents are not legally bound to support their adult children and cannot be held responsible for the maintenance of an adult child, and at page 898 of 214 Iowa, page 301 of 243 N. W., we said:

"Reading all these statutes together, the interpretation stands out plainly that the only persons within the legislative mind, to be held liable, were such relatives as were liable at common law. The statute did not purport to create or pursue new or other liabilities, which might arise out of contract or out of tort.''

We then said that the statute should be strictly construed and that it should go no further. So we find that there was no liability upon the appellants for the support of their son after he became of age, which was on April 28, 1937, unless section 3595 enlarged the liability of parents, and that the legislature, when it wrote into the statute the words "shall remain liable," intended that parents should remain liable after the child became of age.

It is, of course, always difficult for the judicial branch of the government to ascertain the intent of the legislature, but when the legislature itself sees fit to change the statute, it would seem there could be little doubt but that the legislature recognized the judicial interpretation placed upon the Code section which it changed.

Chapter 98 of the Acts of the Forty-eighth General Assembly, which became effective July 4, 1939, was entitled, "AN ACT to amend * * * section * * * (3595), code, 1935, * * * relating to persons legally liable for the support of insane or idiotic persons; * * * '' and provided as follows:

"Persons legally liable for the support of an insane or idiotic person shall include the spouse, father, mother, and

adult children of such insane or idiotic person, and any person, firm, or corporation bound by contract hereafter made for support.''

While chapter 98 of the Acts of the Forty-eighth General Assembly, as it now appears in the 1939 Code, is not involved in this appeal, we can come to no other conclusion than that the legislature definitely recognized the judicial interpretation by specifically providing that a father and mother should be legally liable for support furnished an adult child at a state institution. The previous statute, section 3595 of the 1935 Code, merely provided that insane persons and persons legally liable for their support shall remain liable, but it did not undertake to state who was legally liable. This court had held that parents were not legally liable for the support of an adult child. The legislature recognized this, and by the amendment enacted by the Forty-eighth General Assembly changed the law so that now fathers and mothers are legally liable. So we not only have many judicial interpretations of the statute involved but we have legislative recognition, for the legislature of the state of Iowa construed the former statutes by the amendment of the Forty-eighth General Assembly. By passing the amendment, the legislature clearly showed that prior to the passage of the amendment fathers and mothers were not legally liable for the care of an adult child.

In the case at bar there is no question of the liability of the appellants to Humboldt County for the care of their child from the date he was admitted to the state sanatorium, to wit, January 11, 1937, until the date he became of age, to wit, April 28, 1937, and for that amount Humboldt County is entitled to judgment.

This case will be reversed with instructions to the lower court to enter judgment against the appellants for the moneys expended by Humboldt County for the care and support furnished to J. Keith Biegger while he was a patient in the state sanatorium at Oakdale, Iowa, from January 11, 1937, to April 28, 1937.—Reversed with instructions.

MILLER, OLIVER, WENNERSTRUM, and SAGER, JJ., concur.

BLISS, C. J., and STIGER, HALE, and GARFIELD, JJ., dissent.

BLISS, C. J. (dissenting)—I. Section 3595, Code, 1935, as amended by chapter 98 of the Laws of the Forty-eighth General Assembly, and as the section now stands in the Code of 1939, has definitely settled the question for the future, which is involved in this case and which has troubled the court in the past. Under prior decisions of the court, the decision of the majority has support, although I question the soundness of a number of those decisions and the interpretation therein placed upon section 3595, Code of 1935, and the sections corresponding thereto in the earlier Codes. I especially object to basing the majority opinion upon Iowa County v. Amana Society, 214 Iowa 893, 243 N. W. 299, and to the inclusion in the majority opinion of the long quotation from that case. The plaintiff in that case based its right of recovery upon the contractual liability of the defendant, under its articles of incorporation and constitution, to support and care for its old, sick, and infirm members. Its contention was that this contract obligation entitled it to recover against the society, under the provision of section 2297, Code of 1897, which permitted the plaintiff county to recover any sums paid by it in support of insane persons "from any person legally bound for their support." The plaintiff bottomed its case upon that contract. The burden was upon the plaintiff to establish it. The court found and held that it failed to carry this burden. That finding was an end of the case. This was expressed by Justice Kindig in his special concurrence. The general discussion and interpretation of section 2297 in the opinion was wholly unessential to the determination of the case and was dictum. It had no place in that opinion, and has no place in the majority opinion. I question the soundness of the statement on page 898 in the Iowa Report of the Amana case, to wit:

"Reading all these statutes [section 2297] together, the interpretation stands out plainly that the only persons within the legislative mind, to be held liable, *were such relatives as were liable at common law*. The statute did not purport to create or pursue new or other liabilities, which might arise out of contract or out of tort." (Italics supplied.)

Any such interpretation must be read into the statute. The wording of the statute does not warrant it.

In Monroe County v. Teller, 51 Iowa 670, 672, 2 N. W. 533, 534, cited as support in the Amana case, the court said "relatives," as used in section 1433, Code of 1873, "must be construed to mean the persons from whom the county may collect such claims; that is, 'persons legally bound' for the support of the insane person." This language clearly cannot be construed as limiting recovery to "such relatives as were liable at common law."

Further, what warrant is there for saying that any person, relative or nonrelative, who had bound himself by contract to care for an insane person, or one who became insane, would not be liable to the county, and, within the language of the statute, "legally bound for the support of the insane person"? What reason is there for saying, "the legislative mind" did not contemplate such contract liability, or liability other than the common law?

The quotation from the Amana case, page 898 of 214 Iowa, page 301 of 243 N. W., states: "The statute did not purport to *create or pursue new or other liabilities, * * ** " The court was construing section 2297, Code of 1897. But section 3595, Code of 1935, under consideration in the case before us, expressly states, "The county auditor * * * shall enforce *the obligation herein created* * * * ." (Italics supplied.) This is statutory, and not common-law liability. It is hardly likely that the "legislative mind" contemplated only relatives liable at common law in view of the uncertainty and confusion which existed as to what the common-law liability was in England, and in this country, respecting parental liability for the support of their children. This confusion was noted by this court, in Johnson v. Barnes, 69 Iowa 641, 642, 29 N. W. 759, in this language:

"The obligation of parents to support their children at common law is somewhat uncertain, ill defined and doubtful. Indeed, it has been said that there is no such obligation."

See, also, comment in 74 Am. Dec. 779.

In the Monroe County case, supra, and by quotation therefrom in other of our cases, it is said:

"A father is not legally bound to support his adult children at common law, *nor under the statutes of this State.*" (Italics supplied.)

The italicized words are not now, and never have been, a correct statement of the law. In every Code of Iowa, from and including that of 1851, there have been statutory provisions making the parents and other kindred liable for those entitled to support, whether they be minors or adults. Section 787 of the Code of 1851 provided:

"The father, mother, children, grandfather if of ability without his personal labor, and the male grandchildren who are of ability, *of any poor person who is blind, old, lame, or otherwise impotent so as to be unable to maintain himself by work* shall jointly or severally relieve or maintain such poor person in such manner as may be approved by the trustees of the township * * * but these officers shall have no control unless the poor person has applied for aid." (Italics supplied.)

Under this section and later corresponding sections, the parents might be required to support an adult child who was in the unfortunate condition specified. The italicized words do not exclude an insane person, nor one otherwise impotent because of disease or other bodily infirmity.

In the Code of 1851 there were no provisions for the care of the insane in public asylums or hospitals. Such legislation first appeared in chapter 59 of the Revision of 1860. And when, by section 1488 of that Revision, it was provided that county clerks collect "from any person or persons legally bound to support such patient, the amount for which such county is liable for the support of such patient in the hospital," it was intended that "those legally bound" were the persons mentioned in section 787 of the Code of 1851, and in sections 1355 and 1375 of the Revision, and not relatives liable only at common law.

It is a fair assumption that the same intention was in the minds of the subsequent legislatures in enacting similar statutory provisions. In the Code of 1924, and later Codes, the sections corresponding to section 787, Code of 1851, and section 1355 of the Revision, are sections 5297, 5298, 5301, 5309 et al.

The court has been quite liberal in construing what steps must be taken to establish such liability. See Boone County v. Ruhl, 9 Iowa 276; Hamilton County v. Hollis, 141 Iowa 477, 119 N. W. 978; Bremer County v. Schroeder, 200 Iowa 1285, 206 N. W. 303. I appreciate that this court has held, in Wright County v. Hagan, 210 Iowa 795, 231 N. W. 298, following Monroe County v. Teller, supra, that a mother or her estate was not liable for the support of an adult daughter in the state hospital for epileptics and feeble-minded. Also in Blachley v. Laba, 63 Iowa 22, 18 N. W. 658, 50 Am. Rep. 724, a father was not held liable for the services of a doctor called by an adult unmarried daughter in his home. But these decisions must be considered in the light of the facts in each case. It is my view that it has always been the intention of the legislatures, in the enactment of statutes authorizing counties to recover for the care of the insane, to permit recovery from those persons who could be compelled to pay the county for the support of those unable to support themselves, under similar statutes. The basis of their liability in each class of cases is the same. That basis is kinship to the unfortunate persons. The adoption by the Forty-eighth General Assembly of chapter 98 of its laws, in my judgment, was but a clarification of its earlier enactments, and a definite expression of the legislative intent at all times to make those liable for the care of the insane who were and had been subject to liability for the support of the poor, and to set the courts aright in the matter.

II. The patient in this case was the minor son of the defendants. It is undisputed that they were liable for his care and support during his minority. This liability is based upon the fact that they brought him into the world, and his incapacity, both legal and natural, demands that they give him necessary care for his well-being. It is a legal and moral duty, regardless of any statute. It is also a duty to the public. It is the general rule that this liability terminates when the child attains his majority. However, the basis of the liability is the incapacity, either physical or mental, of the child to properly care for himself. Certainly, if a child were an idiot, or became insane during his minority, or was physically disabled by disease or

other infirmity, he would be just as incapable of caring for himself the day after he became of legal age, as he was the day before. In such cases the liability of the parent does not automatically and arbitrarily stop when the child reaches his majority, but continues until the necessity for support ceases. 39 Am. Jur. (Parent & Child) 645, section 40, and cases cited; Schultz v. Western Farm Tractor Co., 111 Wash. 351, 190 P. 1007, 14 A. L. R. 514. It is a generally accepted rule that where the child, on becoming of legal age, is in such a feeble and dependent condition physically or mentally as to be unable to support himself, the parental obligations and duties toward such a child remain unchanged. 29 Cyc. 612; 20 R. C. L. 586; 39 Am. Jur. 710, 711, section 69; Breuer v. Dowden, 207 Ky. 12, 268 S. W. 541, 42 A. L. R. 146.

The exact condition of the defendants' son is not shown in this record. But he was afflicted with the dread disease of tuberculosis to such an extent as to require hospitalization and care in a state institution. It may be fairly inferred that his condition was such that he was unable to properly care for himself. It is conceded that when he was placed in the sanatorium he was a minor and that the parents were bound, morally, legally, and by the law of nature, to support and care for him at that time and during his minority. The stipulation says nothing about any promise on the part of the defendants to pay for that care. But since it was their legal duty to do so, such a promise may be implied as a matter of law. The son remained in the institution after becoming of age, and received care, support, and treatment. It may be assumed from this fact that his physical disability continued throughout this period, and that therefore the liability and duty of the defendants to see that he was cared for continued, and their promise to pay therefor during that time will also be inferred. The judgment of the court was, therefore, right.

- III. Section 3595, Code of 1935, provides that persons legally liable for the support of a patient "shall remain liable" therefor. The defendants were liable when their son was placed in the institution. He was allowed to remain there. The trial court was of the opinion that the quoted words were placed in

the statute for a purpose, and must be given some meaning. It was its conclusion that the liability which existed at the beginning remained throughout the time the boy was a patient in the sanatorium. I think there is merit in the court's conclusion. The statute should not be given a narrow construction, nor should the court be overastute to relieve the defendants from a liability which the laws of the state, nature, and of God have placed upon them.

For all of the reasons stated, I respectfully dissent from the majority opinion. I would affirm the judgment of the trial court.

STIGER, HALE, and GARFIELD, JJ., join in this dissent.