CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, appellee, v. WILLIAM H. NICHOLAS, Commissioner of Iowa State Highway Commission et al., appellants.

No. 51648.

(Reported in 137 N.W.2d 900)

116

NOVEMBER 16, 1965.

Lawrence F. Scalise, Attorney General, and Bruce M. Snell, Jr., Special Counsel for the State of Iowa, of Ida Grove, for appellants.

More & More and Larson & Larson, all of Harlan, and Morrison, Foerster, Holloway, Clinton & Clark, of San Francisco, California, for appellee.

LARSON, J.—This suit in equity involves the construction, interpretation and application of chapter 250, Laws of the Fifty-eighth General Assembly, known as chapter 326 of the 1962 Code of Iowa. Consolidated Freightways, a corporation, appellee, is an interstate motor carrier which operates its trucks on Iowa highways in the course of its business as a common carrier. Defendant-appellants are the members of the Iowa Reciprocity Board. Suit was brought to enjoin a threatened cancellation of appellee's right to operate its motor trucks in Iowa, to construe the provisions of chapter 326 of the Code relating to licensing and taxing of interstate motor carriers operating in Iowa, and to recover alleged overpayments of license fees for the years 1961 and 1962. Pursuant to a hearing, a temporary injunction was granted and defendants then counterclaimed for additional license fees.

Upon joinder of issues plaintiff moved for a determination of questions of law under rule 105, Rules of Civil Procedure,

and subsequently filed a motion for judgment on the pleadings. After due hearings, the trial court entered judgment against defendants and dismissed their counterclaim. They appeal. We affirm the decision.

Chapter 326, Code of Iowa, 1962, established what is known as the Iowa Reciprocity Board, and provides that it shall have authority to make reciprocity agreements with other states or responsible authorities whereby nonresidents may be exempt from paying the usual registration fees to this state when using Iowa highways. It further provides that such agreements may provide "with respect to resident or nonresident owners of fleets of two or more (commercial) vehicles which are engaged in interstate commerce, * * * that the registrations of such fleets can be apportioned between this state and other states in which such fleets operate."

The formula to be used by the board is set out in section 326.2 as follows: "The percentage of miles such fleets operate in this state as related to the total miles such fleets operate in all states, shall be used by the reciprocity board to determine the amount of registration computed on a dollar basis." Then follows the time period for computing these respective mileages, and this sentence: "The apportioned registration fee computed on a dollar basis is equal to the amount obtained by applying the proportion of in-state fleet miles to total fleet miles to the fees which would otherwise be required for total fleet registration in this state and shall mean a percentage of the annual fee on each vehicle of an apportioned fleet, plus the amount of the fees due as hereinafter provided for the issuance of plates, stickers, or other identification for all the vehicles registered in accordance with this chapter."

It is further provided that "When a nonresident fleet owner has registered his vehicles on an apportionment basis, his vehicles shall be considered fully registered insofar as interstate commerce is concerned."

In section 326.3 the fleet owner is required to submit under oath information necessary for the board's consideration of his application, and from which it may compute apportionment. It is then stated: "If the fees for such apportioned registration are

not paid to each contracting state, * * * entitled thereto within a reasonable time as shall be determined by the board, the board shall redetermine fees due this state; and, if the additional fees due this state are not paid by the owner within twenty days after the mailing to him of a notice by certified mail of the additional fees due, the registration in this state shall be canceled; and, in addition, the additional fees due for registration in this state shall be a debt due to the state of Iowa."

The primary dispute gravitates around the plaintiff's contention that the language of the statute is clear and the formula fixed for computing fees mandatory and complete, and the defendants' contention that there is ambiguity in the reciprocity statute and that it "provides for a determination of truck license fees by a formula that results in the equivalent of one full fee being divided among those states that have agreed to prorate fees."

The principal issues before the court when adjudicating law points (R. C. P. 105) were, (1) whether the formula for determining registration, stated in section 326.2 as the percentage of miles such fleets operate in this state as related to the total miles such fleets operate in all states, is based upon miles operated in all states or miles traveled in only those states with which Iowa has an apportioning agreement; and (2) whether section 326.3 authorizes a redetermination of fees due Iowa, when all license fees, taxes or other assessments due each other contracting state entitled thereto are paid in full.

Appellants contend the chapter and its various sections, as shown by substantial extrinsic evidence introduced over plaintiff's objections, disclose the legislative intent to confine the percentage formula to only those apportioning states, that miles traveled outside those states are not counted in figuring the percentage due each contracting state, that the aggregate percentage of registration fees paid to prorating states must equal 100 percent, and, if it does not and this state is the base plate state, it can claim the percentage difference. Unless these contentions have foundation in the language used, of course extrinsic evidence as to the legislative intent would be inadmissible.

Our first duty, then, is to examine the statutes and, un-

less a contrary intention is evident, give the words used their ordinary and commonly understood meaning. Unless the words are of doubtful meaning or it appears an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, we are powerless to search for another meaning.

I. The rules of statutory construction in this jurisdiction are quite well established. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable there is no room for construction and we are not permitted to search for its meaning beyond the statute. Herman v. Muhs, 256 Iowa 38, 40, 126 N.W.2d 400, 401, and citations.

We have said a statute is open to construction where the language used in the statute requires interpretation—that is, where the statute is ambiguous, or will bear two or more constructions, or is of such doubtful or obscure meaning that reasonable minds might be uncertain and disagree as to its meaning. Smith v. Board of Trustees, 238 Iowa 127, 128, 25 N.W.2d 858; Palmer v. State Board of Assessment and Review, 226 Iowa 92, 283 N.W. 415; 50 Am. Jur. 204, section 225.

We have also said we need not go beyond the plain and ordinary use of the words in the statute itself, and the meaning to be given the words used will be determined from the character of their use, and they will be given their natural, plain, ordinary and commonly understood meaning in the absence of any statutory or well established technical meaning. Case v. Olson, 234 Iowa 869, 14 N.W.2d 717, and citations; Re Trust of Highland Perpetual Maintenance Soc., 254 Iowa 164, 172, 117 N.W.2d 57, and citations; section 4.1(2), Code, 1962.

We said in Meredith Publishing Co. v. Iowa Employment Security Comm., 232 Iowa 666, 6 N.W.2d 6, that legislative intent must be deduced from the clear language of the statute and such language must be construed according to its plain and ordinary meaning. We reasoned therein that if the words used were to have any other meaning or the term was being used in a sense different from its accepted meaning the legislature could and should expressly define the meaning of the term as it is to be used in that statute. Having not done so, we presume the terms

used were to be given no other than their plain, ordinary and accepted meaning. The rule seems applicable here.

■ When a statute uses the word "shall" in directing a public body to do certain acts, the word is to be construed as mandatory, not permissive, and excludes the idea of discretion. Hansen v. Henderson, 244 Iowa 650, 665, 56 N.W.2d 59, and citations. Here the statute plainly states the board *shall* use the prescribed formula.

■■ Appellants seem to recognize those rules, but contend that the words "all states" and "total fleet miles", due to the character of their use, refer to "all *apportioning* states" and to "total fleet miles *in apportioning states.*" The word "all" is commonly understood and usually does not admit of an exception, addition or exclusion. Cedar Rapids Community School Dist. v. City, 252 Iowa 205, 211, 106 N.W.2d 655, 659; 50 Am. Jur., Statutes, section 286, page 269. The use here admits no exclusions, and we see no logical reason to hold it means less than all states in which the carrier travels. It was the feeling of the trial court that such modification was not permissible and that even if defendants' extrinsic evidence were considered, it would not sustain those conclusions. We find no patent ambiguity in the words used.

The only legitimate purpose of statutory construction and interpretation is to ascertain the legislative intent, but when the language of the statute is so clear, certain and free from ambiguity and obscurity that its meaning is evident from a mere reading, then the canons of statutory construction are unnecessary, because there is no need of construction and interpretation. We need not, indeed we should not, then search beyond the wording of the statute. Jones v. Thompson, 240 Iowa 1024, 1036, 38 N.W.2d 672, 678.

■■ Of course, all provisions of the Act of which it is a part and other pertinent statutes, must be considered. Horner v. State Board of Eng. Exmrs., 253 Iowa 1, 8, 110 N.W.2d 371; City of Nevada v. Slemmons, 244 Iowa 1068, 1071, 59 N.W.2d 793, 43 A. L. R.2d 693; Sinclair Refining Co. v. Burch, 235 Iowa 594, 16 N.W.2d 359. Then if doubt appears, administrative interpretation and construction is given weight. However, it

must be remembered that the plain provisions of the statute cannot be altered by an administrative rule or regulation, no matter how long it has existed or been exercised by administrative authority. Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 507, 107 N.W.2d 553, 558, and citations. To permit a commission or board to change the law by giving to the statute or Act an interpretation or construction of which its words are not susceptible would be a departure from the meaning expressed by the words of the statute. Hindman v. Reaser, 246 Iowa 1375, 72 N.W.2d 559. No authority appears herein for the board to fix or alter the formula for prorationing by agreement, and its attempt to do so must fail.

█ If changes in the law are desirable from a policy, administrative, or practical standpoint, it is for the legislature to enact them, not for the court to incorporate them by interpretation.

II. The trial court, in an abundance of caution, permitted considerable extrinsic evidence as to legislative intent—in fact, almost 400 pages of it in the record—but came to the conclusion that it disclosed no latent ambiguity or uncertainty in the provisions of this Act. It decided, and we agree, the only uncertainty as to the legislative intent appears to be generated by defendants' extrinsic evidence in the form of plats and charts, as well as testimony of the draftsmen, lobbyists, and department members who have been administering the law over the past several years. The court properly concluded such evidence was inadmissible, being immaterial to the issue considered under rule 105, R. C. P.

It would be hard to express the formula for fixing the percentage of fleet fees due Iowa more clearly than is found in the Act. Section 326.1 provides for the creation of a reciprocity board. Section 326.2 authorizes the board to make reciprocity agreements with other states, and in clear and unmistakable language provides the formula for reciprocal registrations of interstate carrier fleets. This language, "The percentage of miles such fleets operate *in this state* as related to the total miles such fleets operate *in all states, shall* be used by the reciprocity board to determine the amount of registration computed on a dollar

basis", leaves no doubts. (Emphasis supplied.) Other language on the same subject used in this section conforms. It provides: "The apportioned registration fee computed on a dollar basis is equal to the amount obtained by applying the proportion of *in-state fleet miles* to *total fleet miles* to the fees which would otherwise be required for total fleet registration in this state and shall mean a percentage of the annual fee on each vehicle of an apportioned fleet, * * *." (Emphasis supplied.)

We find nothing in these sections to indicate the words used were meant to have a technical meaning or that they have acquired a peculiar or special meaning when used in licensing or reciprocity statutes.

Indeed, an examination of the whole Act does not justify the conclusion that the legislature meant to confine the formula to all compact states, or to all states with which Iowa has proportional agreements. No ambiguity in the use of the term "all states" results because, as alleged by appellants, the Act relates only to the board's power to negotiate proportional agreements. The Act obviously relates to all reciprocity agreements, straight and apportioned.

▆▆ III. Next, it is urged that the trial court's construction would defeat the manifest overall intention of the legislature. We find nothing to indicate the proportion intended should exceed the percentage of fleet miles of an interstate carrier operated in this state, divided by the miles operated in all states, including compact states. There is nothing in these sections which requires the carrier to pay 100 percent of one fee to all states, compact or not, in order to be fully licensed in Iowa. That such a requirement might be desirable is not our question. Apparently there is something to be said either way on that policy question. For instance, it appears that California and South Dakota are not concerned whether all the percentages paid to compact states equal 100 percent of the fleet license fees. They concern themselves with their proportional percent, and nothing more. On the other hand, it would seem the industry is mostly concerned with not paying more than 100 percent to all states in which they travel, and if all were to join the compact, that would not be the result of such apportionment agreements.

Reciprocity is not the vital issue in this case. Iowa has had reciprocity with all states, except Arizona, over a period of many years. Without reciprocity among the states, interstate transportation would be greatly impeded, for no carrier could afford to license his vehicles in every state through which it travels. The effort to obtain fair compensation to the state furnishing highways for such travel is a continuing process. In an effort to be fair and satisfy the various states in the past, carriers have voluntarily or by agreement with authorities purchased a portion of their licenses in states other than their residence, and this procedure was known as an apportionment of vehicles. Since prior to 1960 Iowa licenses could not be issued for partial fees, chapter 326 was enacted in an effort to apportion licenses on a dollar basis.

Whether the proponents of this Act contemplated an agreement between all states a carrier traveled, or contemplated an apportionment of a total fee among the contracting states, is not our problem. We must take the law as it was enacted. Its meaning and application as determined by the trial court would not lead to injustice, absurdity, or contradictory situations, and we cannot say the effect of the clear language used here would be bad or undesirable. We cannot say, when Iowa receives a fair percent of the license fees in proportion to the fleet miles traveled in Iowa to those traveled in other states or countries, the result is unjust or absurd. The policy of what percentage Iowa is to get and how figured is peculiarly a legislative function. When it acts in such a matter, we must adhere to our rule stated in 344(f)13 that in construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said.

If, as appellants maintain, the board members and the administrators intended something different at the time this bill was drawn and introduced, they failed to state it. It seems more likely, as they attempted administration and it became evident every state would not embrace the proposed agreements, that changes in law were desirable. That this was so and that changes were made prior even to this decision is established by House File 637, Acts of the Sixty-first General Assembly, which amend-

ed chapter 326 of the 1962 Code and became the law of this state on June 3, 1965.

IV. Perhaps we should take special notice of these legislative changes. The words in section 326.2, "other states in which such fleets operate", were stricken, and in lieu thereof were inserted the words, "the other states a party to such agreements". The words, "fleets operate in all states, shall be used by the reciprocity board to determine the amount of registration computed on a dollar basis" were stricken, and in lieu thereof the following was inserted: "fleets operate in all states *with whom Iowa has an apportionment registration agreement and with whom the fleet owner has or will register vehicles on an apportioned registration basis* shall be used by the Iowa reciprocity board to determine the amount of registration computed on a dollar basis." (Emphasis supplied.)

 Usually it is not easy for the judicial branch of the government to ascertain the intent of the legislature, but when the legislature itself sees fit to substantially change the statute, it would seem there could be little doubt but what the legislature recognized the judicial interpretation as correct and the desirability of a change. Humboldt County v. Biegger, 232 Iowa 494, 4 N.W.2d 422. Usually when an amendment is adopted, it is presumed the legislature intended to make a change in the existing law, and courts will therefore endeavor to give some effect to the amendment. Crawford v. Iowa State Highway Commission, 247 Iowa 736, 76 N.W.2d 187; State v. Flack, 251 Iowa 529, 533, 101 N.W.2d 535, and citations.

Obviously, these and other changes made by the recent session of the legislature materially altered the meaning of this chapter. It announces in clear language that the composite percentage paid by the Iowa resident to each of the states a party to an apportioned registration agreement with Iowa for apportioned registrations must not be less than 100 percent. These changes are significant and now express the appellants' view of the law prior to the amendment of chapter 326. While changes are sometimes made only to clarify a statute, these changes materially changed the law. They further show a clear and unmistakable legislative intent in this area was not difficult to express.

V. Finally, we think the language of section 326.3 does not lend itself to appellants' contention regarding the basis for redetermination of plaintiff's fees. It simply provides that a a redetermination of license fees is permitted only when the percentage *due* each state in the compact is not paid. No such situation appears here, but perhaps the section should be considered as bearing on the construction of the whole chapter. Appellants argue the language used sustains their claim to the percentages which would have been due other states had they joined the compact. The pertinent part of this section states: "If the fees for such apportioned registration are not paid to each contracting state * * * *entitled* thereto within a reasonable time as shall be determined by the board, the board shall redetermine fees due this state * * *." (Emphasis supplied.)

Acting under this section, the board attempts to redetermine and charge to the carrier any percentage not accounted for or paid to *contracting states* up to 100 percent of the fleet license fees for that year. Thus, if the percentage of all contracting states totals only 25 percent, the board argues it is to redetermine and assess additional fees of 75 percent to the carrier although the miles giving rise to this percentage were traveled in noncompact states. The basis of this claim is that reciprocity exemptions are furnished the carrier in noncompact states by this state's base plates.

Appellee says this provision is clearly an enforcement provision, and only gives the board the right to alter faulty estimates or representation in the carriers' original applications. Here again we think the legislative intent, although not so clearly expressed, is that if the percent contemplated and assessed by any of the other compact states for miles traveled in their states is not paid during the year, the carrier shall not be credited with the miles traveled in that state. Thus the percentage due Iowa would be increased to that extent and a redetermination of predetermined percentages is required. This must be true, for noncompact states are not "entitled" to apportioned registrations, and there would be no delinquency of the carrier as to them. Also, when it appears from the carriers' original application estimate of mileage to be traveled in various states that there has been an error, the percentage should be refigured.

Appellants deny this was the intention, but do not explain why the percentages of travel anticipated in noncompact states were not determined and considered in fixing percentages when the original data was furnished under oath. Surely, if that was the express intention of the law, the original percentages should have been figured differently and Iowa should have had more fees originally. However, under this record it seems the board itself did not so interpret this section until late in 1962, almost three years after the Act became effective. At least it did not appear in the carriers' instructions furnished by the board over that period.

We have no quarrel with the policy of crediting the resident or "base plate" state with the percentage of travel in other states under regular reciprocity, but as above stated, such is not permitted under the wording of this statute. A 100 percent registration license was not initially required, expressly or inferentially. On the other hand, it is significant that the substantial changes made in 1965 by House File 637, chapter 302, section 3, Acts 61st G. A., did expressly provide:

"If the composite percentage paid by the Iowa resident to each of the states a party to an apportioned registration agreement with Iowa for apportioned registrations is less than one hundred (100) percent percentagewise, the Iowa reciprocity board may redetermine the registration fees due the state of Iowa to bring the composite percent to one hundred (100) percentagewise. If the composite percent paid by the nonresident fleet operator to each of the states a party to an apportioned registration agreement with Iowa for apportioned registration fees on vehicles base plated in Iowa is less than one hundred (100) percent percentagewise, the Iowa reciprocity board may redetermine the registration fees due the state of Iowa to bring the composite percent to one hundred (100) percent percentagewise on such Iowa base plated vehicles."

VI. It would do no particular good to pursue all the able arguments advanced by the parties, or to review their efforts to apply the rules announced in the numerous cases, textbooks and other references. Space will not permit. Much of appellants' arguments relates to and intermingles policy. Attesting to its

persuasive power is the enactment of House File 637. However, the problem before the trial court was confined to the meaning of sections 326.2 and 326.3 as written, and while the arguments are somewhat difficult to follow, due to the fact that extrinsic evidence is considered as if it were material, we agree with the trial court that there is only one formula for computation of fees provided in chapter 326, Code of Iowa, 1962, and that this formula is based upon the proportion of miles traveled in Iowa, as compared to miles traveled in all states, applied to the full Iowa fee for the carrier's fleet; that full apportionment or distribution of the Iowa base plate fee is not required therein, and that the chapter exempts a carrier from registration requirements of chapter 321 of the Code; that redetermination of fees due this state is provided for only upon nonpayment of fees due other contracting states under their own laws, thus wrongfully assuming credit for percentages not accounted for; that there is no ambiguity in the chapter, and that extrinsic aids to construction were not admissible.

VII. On October 1, 1964, the trial court entered judgment on the pleadings against defendants, finding that the plaintiff had paid to the defendant Iowa Reciprocity Board for the registration of its fleet of tractors in Iowa for 1961 and 1962 the sum of $40,801.51, as computed by the defendant board on compact miles instead of total fleet miles as was provided by the Iowa law, that the fee when properly computed was $13,772.83, and the overpayment amounted to $27,028.68. Judgment was rendered accordingly.

The trial court further found that all fees for registration due Iowa on vehicles involved herein for the years 1961 and 1962 had been paid. Defendants' counterclaim for redetermined fees was dismissed.

Appellants do not dispute the correctness of these amounts and, although the right to order refunds from the board is questioned, we find no merit therein. The trial court's judgment is —Affirmed.

All JUSTICES concur except JUSTICE SNELL, who takes no part.