**NISHNABOTNA VALLEY RURAL ELEC-TRIC COOPERATIVE, Respond-ent-Appellant,**

and

**American Beef Packers, Inc., Intervenor-Appellant,**

v.

**IOWA POWER AND LIGHT COMPANY, Complainant-Appellee,**

and

**Iowa State Commerce Commission, Appellee.**

**No. 52971.**

Supreme Court of Iowa.

Sept. 17, 1968.

Wisdom, Sullivan & Golden, Des Moines, and Hines & Sawin, Harlan, for respondent-appellant.

Cudahy & Wilcox, Jefferson, for intervenor-appellant.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, and Ross, Johnson, Stuart, Tinley & Peters, Council Bluffs, for complainant-appellee.

Leo Steffen, Des Moines, Thomas Bolton, West Des Moines, Daniel Fay, Cedar Rapids, and Susan Thomas, Des Moines, for appellee, Iowa State Commerce Commission.

BECKER, Justice.

This case involves competing suppliers of electric power. Each seeks to service a new packing plant constructed immediately north of the city of Oakland. The Iowa Power and Light Company filed a complaint with the Iowa Commerce Commission charging that Nishnabotna Valley Rural Electric Cooperative was violating the law in servicing the American Beef Packers, Inc. at its new location. Both companies are subject to regulation under Chapter 490A, Iowa Code, 1966 [1] but the cooperative is exempt from rate regulation.

After a full hearing the commission ordered Nishnabotna to cease service and ordered Iowa Power and Light to service the plant. On appeal the district court sustained the commission but on grounds other than those used by the commission. We reverse the trial court and remand the matter to the commission for further proceedings.

I. Where two electric utilities are both desirous of servicing a customer, Iowa Code, 1966, section 490A.24 controls: "Overlapping service. No public utility shall construct or extend facilities or furnish or offer to furnish electric service to the point of delivery to any consumer already receiving electric service from another public utility. No public utility shall construct or extend facilities or furnish electric service to a prospective customer not presently being served unless its existing service facilities are nearer the proposed point of delivery than the service facilities of any other utility." The third sentence of the section will be considered in Division III.

American Beef Packers, Inc., was incorporated in 1965 and immediately bought the 130 acre tract known as the Robert Allen Farm. This tract had a set of farm buildings on the south east portion of the acreage but they had not been occupied after the year 1962. At that time and for years prior thereto Iowa Power and Light had been servicing the farm with a single phase, 120/240 voltage for the then occupants. Iowa Power and Light also furnished the same type service to the dirt moving and site preparation contractors who removed the building and graded the land after American Beef Packers bought the property. The packing plant, when erected and in operation, required a three phase 240/480 volt service. After the building site had been prepared and American Beef Packers applied for membership, Nishnabotna ran a temporary single phase line to the site for electric service for plant construction. The present complaint was then filed.

These facts are sufficient to examine the effect of the first sentence of section 490A.-24 upon which the trial court turned its decision: "No public utility shall * * * furnish electric service * * * to any consumer already receiving electric service from another public utility." The commission made no explicit finding in regard to this prohibition but put its decision on other grounds to be considered later. The commission's order is silent as to a finding that the consumer, American Beef Packers, was not already receiving service from another utility, but the grounds for the order assume such finding. The commission's brief makes this position explicit by urging us to affirm the trial court but in so doing disavows the following basis for court's affirmance. "THE COURT FINDS that the Iowa Power and Light Company had served the Allen farm since November 27, 1949, and their right to serve the entire farm as a farm could not be questioned. * * *

1. Chapter 490A became law July 4, 1963. Interpretation of various sections here considered raises problems of first impression.

"The change in ownership of the tract to be operated as a farm could not change the right to serve, merely because there was a new owner. It is the area or territory that is protected by the statutes, and a change from an original owner-consumer to a new owner-consumer could have no effect as to who would be entitled to serve the premises. The statute is for the protection of territory being served by a utility, and the right to serve the territory or premises, once having been established, a change in the use of the premises would be immaterial. The right to serve an area when once established should remain inviolate to protect the public from the expense of duplication and, in some instances, cut-throat competition."

Iowa Power and Light seeks to uphold the above ruling. It is determinative of the case in their favor. The commerce commission rejects this rationale with the following argument: "The Commission in this appeal seeks to have the court affirm the result of the district court but for the reasons and findings set forth in the original Commission order." and "Neither does the statute say, as the district court would interpret it, that the utility which has a distribution line in a particular owner's parcel of land shall have the exclusive right to serve that parcel in perpetuity. The right to serve depends upon conditions existing at the time service is sought. The lower court's interpretation would require that service be furnished to a particular parcel by the electric utility that was serving it July 4, 1963, the effective date of Chapter 490A * * *

"From a regulatory standpoint, the prospective customer should be required, except in unusual cases, to take electric service from the nearest utility. It is obvious that, generally speaking, the nearest utility can extend its service with the least capital investment."

In Consolidated Freightways Corporation of Delaware v. Nicholas, 258 Iowa 115, 120, 121, 137 N.W.2d 900, 904 we said : "We said in Meredith Publishing Co. v. Iowa Employment Security Comm., 232 Iowa 666, 6 N.W.2d 6, that legislative intent must be deduced from the clear language of the statute and such language must be construed according to its plain and ordinary meaning. We reasoned therein that if the words used were to have any other meaning or the term was being used in a sense different from its accepted meaning the legislature could and should expressly define the meaning of the term as it is to be used in that statute. Having not done so, we presume the terms used were to be given no other than their plain, ordinary and accepted meaning. The rule seems applicable here."

We must agree with the commission. We find nothing in the statute to justify concluding: "The statute is for the protection of territory being served by a utility." The statute uses the words "consumer already receiving electric service" and in the next sentence "a prospective customer not presently being served."

In Dunshee v. Standard Oil Co., 126 N.W. 342, 344 we defined customer. "A customer is a person with whom a business man has repeated or regular dealings. The customer of a retail dealer in oils is one to whom he makes sales and the term does not in itself imply a sale under contract, although such might be the case." In Union Portland Cement Co. v. State Tax Commission, 110 Utah 135, 170 P.2d 164, 171, it is said: " 'Consumer' is defined as 'one who uses economic goods and so diminishes or destroys their utilities; opposed to producer; and "consume" means to use up, expend, waste, devour, with synonyms destroy, swallow up, engulf, absorb, waste, exhaust, spend, expend, squander, lavish, dissipate, burn up.' 9 Words and Phrases, Permanent Edition, 10." Rule of Civil Procedure 344 (f) (13) states: "In construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said."

■ The utilities receive protection as to their consumers or customers but do not receive an exclusive right to service the land as such. The statute is silent as to territorial concept. We hold the trial court erred in determining that as a matter of law American Packers was a consumer already receiving electric service.

That this interpretation may allow new owners of land to prefer one utility to another may be conceded. However, the other conditions of nearness of facilities or commission findings on public interest must be met.

II. The commission's decision must now be examined. The commission assumed American Beef Packers was not a consumer presently being serviced, and proceeded to determine which utility should furnish the electricity under the rule that the utility with the existing service facilities nearest the *proposed point of delivery* is to furnish service, section 490A.24 (second sentence). It found Iowa Power and Light had the nearest existing facility to the *proposed point of delivery* as the commission defined the term. It cited its own opinion in Iowa Southern Utilities Company v. Southern Iowa Electric Cooperative, Inc., a case that had not been decided at the time the instant case was tried to the commission: "While the location of a utility's 'existing service facilities' is in most instances readily ascertainable, thus providing a place from which to commence a measurement, this is by no means true with regard to fixing the terminus, or to use the language of the statute, 'the proposed point of delivery'. Since the term has not been defined in the statute and we require an operational definition to resolve the instant controversy, we are of the opinion that the 'proposed point of delivery' must be an identifiable point to give meaning to the statute. Such point, and the one the Commission designates, is the geographical load center or center of electrical distribution of the site or proposed site to be served."

Nishnabotna and American Beef Packers, Inc. both vigorously challenge the power of the commission to substitute for *proposed point of delivery* the phrase *geographical load center or center of electrical distribution of the site or proposed site to be served.* We agree.

■ In Consolidated Freightways Corporation of Delaware v. Nicholas, supra, 258 Iowa at pages 121–122, 137 N.W.2d at page 905, we said: "However, it must be remembered that the plain provisions of the statute cannot be altered by an administrative rule or regulation, no matter how long it has existed or been exercised by administrative authority. Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 507, 107 N.W.2d 553, 558, and citations. To permit a commission or board to change the law by giving to the statute or Act an interpretation or construction of which its words are not susceptible would be a departure from the meaning expressed by the words of the statute. Hindman v. Reaser, 246 Iowa 1375, 72 N.W.2d 559. No authority appears herein for the board to fix or alter the formula for prorationing by agreement, and its attempt to do so must fail."

Iowa Code, 1966, section 4.1(2) provides: "Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning."

■ *Proposed point of delivery* has an ordinary meaning. We hold the phrase means the point at which the customer proposes to take delivery of the merchandise; in this case, electricity. Substitution of "center of electrical distribution" would insert a technical phrase to establish a theoretical point determined by giving consideration to "the location of the permanent electric loads which have been or which will be installed within a reasonable time as part of existing plans". If this highly technical

meaning and process had been intended by the legislature it surely would have used language other than "proposed point of delivery".

We do not review the technical and practical arguments advanced against such interpretation of the statute. We think it sufficient to observe that the legislature did not use geographical load center or center of electrical distribution and those phrases cannot be read into the statute. The commission proceeded in excess of its statutory jurisdiction in arriving at such a definition.

Because of the definition used by the commission, it did not determine whether a proposed point of delivery, in its ordinary sense, had been established. It should make such determination when this case is remanded to it.

III. The commission did not determine whether, on the issues before it, a decision could or should be made in relation to the power vested in it by the third sentence, Iowa Code, 1966, section 490A.24 which reads: "Notwithstanding the foregoing provisions of this section, any public utility may extend electric service and transmission lines to its own utility property and facilities or to another public utility for resale, or in case the public utility closest to or presently serving the delivery point consents thereto in writing or the commission after notice and hearing, and due consideration of the preference of the consumer, finds that service from a utility other than the closest utility is in the public interest." Since the commission determined Iowa Light and Power had the nearest facilities and should service the plant, the issues created by the third sentence just quoted were treated as moot.

Judicial review of the commission's action is controlled by Iowa Code, 1966, section 490A.17: "Decision of court. The court may dismiss the appeal, modify or vacate the order complained of in whole or in part, or remand the matter to the commission for such further proceedings as justice may require. The court shall have jurisdiction to compel commission action unlawfully withheld or unreasonably delayed and the court shall have the power to set aside the commission action, findings and conclusions found to be:

"1. Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

"2. Contrary to constitutional right, power, privilege or immunity.

"3. In excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

"4. Unsupported by substantial evidence in view of the entire record as submitted."

The detailed provision for the manner of review provided in the statute makes most of our prior cases of doubtful precedential value in determining just what the courts can and cannot do when reviewing commission orders. Cf. Elk Run Telephone Company v. General Telephone Company of Iowa, Iowa, 160 N.W.2d 311 (filed July 18, 1968) which recognizes the statutory character of the mode of appeal. The propositions set out in Circle Express Co. v. Iowa State Commerce Comm., 249 Iowa 651, 86 N.W.2d 888 are similar to those set out in section 490A.17 but that section, passed since the Circle Express Company case was decided, must control in passing on cases brought under Chapter 490A. We find no inconsistency in relation to the matters considered in this appeal.

■ Clearly a review anew is not contemplated. Section 490A.16 specifically prohibits taking of additional testimony by the court but provides for remand in the event further evidence is necessary. Power to dismiss the appeal, modify, vacate or remand is clear. We interpret section 490A.17 only insofar as is necessary for the

purposes of this case. Because of our reversal of the trial court's action and disapproval of the holding of the commission, we hold justice requires the trial court remand this case to the commission for further action not inconsistent with this opinion, to determine the utility authorized to service American Beef Packers, Inc. at their plant north of Oakland.

IV. In light of the foregoing order to remand we think it necessary to consider a further issue raised and argued by the parties. Appellant-respondents raised the issue of consumer preference which is inherent in the phrase "proposed point of delivery" and is explicitly set out in the last sentence of 490A.24 by use of the phrase "and due consideration of the preference of the consumer."

On the consumer preference issue the commission held: "From the record in this case, it appears that the customer's preference for service from Nishnabotna is based primarily on the nature and organization of the utility furnishing that service rather than on any criteria as to the adequacy or prospective adequacy of service from either utility. Because the Legislature, in enacting Chapter 490A, gave particular attention to the necessity of adequate service at just and reasonable rates, and further because the Legislature in this, and other acts, gave particular attention to the desirability of avoiding unnecessary duplication of utility facilities this Commission is of the opinion that the Legislature did not intend that a customer's personal preference as to the nature of a utility organization be given predominant or controlling weight in its determination of public interest under this section of the law. Neither did the Legislature in setting up criteria for the guidance of the Commission in deciding cases such as this, make any mention of the relative levels of cost of utility service supplied by utilities nearer prospective loads. Under such circumstances, the Commission cannot and will not

give consideration to any such factor or criteria."

On its face this holding appears to be a total rejection of consumer preference particularly where the commission feels the preference is motivated by the rate fixing advantage of the cooperatives.

By exempting the cooperatives from rate regulation the legislature appears to have given the cooperatives a strong competitive advantage over the rate regulated companies with which, under the situation outlined in section 490A.24, they compete. However, this is a policy decision made by the legislature. Neither the commission nor the courts can change the legislative policy. Nor should either attempt to do so by strained statutory construction. Whatever the merits of customer preference and its concomitant competitive result vis-a-vis full regulation of *all* utilities, this is a matter to be decided by the legislature.

■ In Elk Run Telephone Company v. General Telephone Company of Iowa, supra, we considered the constitutionality and validity of the broad powers conferred on the commission by Chapter 490A. We held the sections of the chapter considered to be constitutional. In so holding, we recognized the broad powers of the commission: "The general purpose and policy of Chapter 490A is to vest in the Iowa Commerce Commission broad control and supervision over those who furnish what is frequently referred to as public services." As recognized in the Elk Run case, we have never held such powers in an administrative body carry with them power to legislate. The Iowa Commerce Commission's power must be exercised within the standards and guidelines set by the legislature.

■■ The legislature clearly prohibited commission regulation of cooperative rates.[2] The direct prohibition cannot be avoided by indirection. We must hold that the com-

2. No question of constitutionality in this area or rate discrimination against other members of the cooperative is before us.

mission exceeded its statutory authority when it stated: "Under such circumstances, the Commission cannot and will not give consideration to any such factor or criteria."

Under our interpretation of the second sentence of section 490A.24 customer designation of the proposed point of delivery would be controlling. Whether the third sentence of such section is properly before the commission must be determined by the commission.

For the reasons set forth this case is reversed with instructions to remand the matter to the Iowa Commerce Commission for further proceedings not inconsistent with this opinion. Reversed and remanded.

All Justices concur.